20 Ariz. App. 535 (1973)
514 P.2d 288
ARIZONA BOARD OF OSTEOPATHIC EXAMINERS IN MEDICINE AND SURGERY and Joseph F. Antonuccio, D.O., Howard H. Hunt, Jr., D.O., Richard O. McGill, D.O., Milton A. Morey, Horace C. Purtzer, D.O., and Frederick W. Rente, D.O., Individually, Appellants,
v.
Gary Wayne FERRIS, D.O., Appellee.
No. 1 CA-CIV 2197.
Court of Appeals of Arizona, Division 1, Department B.
September 27, 1973.
Rehearing Denied November 6, 1973.
Review Denied December 11, 1973.
*536 Gary K. Nelson, Atty. Gen., by Stirley Newell Cantor and Andrew W. Bettwy, Asst. Attys. Gen., Phoenix, for appellants.
Robbins, Green, O'Grady & Abbuhl, P.A., by Richard W. Abbuhl, Phoenix, for appellee.
OPINION
HAIRE, Judge.
In this appeal we are required to review an order of the Maricopa County Superior Court reversing a decision of the State Board of Osteopathic Examiners in Medicine and Surgery.
The Board of Osteopathic Examiners had denied eligibility for osteopathic licensure to the appellee (Dr. Gary Wayne Ferris), after hearing, on the ground that he had not "served an internship of at least one year accredited by the American osteopathic association, or the equivalent of such internship as determined by the board", as required by A.R.S. § 32-1822, subsec. 3, par. c, and that he had not met the good moral character requirements of A.R.S. § 32-1822, subsec. 2, in that he made false statements to the Board.
The Osteopathic Examiners' decision was reviewed by the Superior Court solely on the record, under the provisions of the Administrative Review Act, A.R.S. § 12-901 et seq. These statutes make no provision for a de novo appeal to the Superior Court. Upon such a review the Superior Court may not substitute its own conclusions for those found by the administrative board acting within its jurisdiction. The Superior Court can only decide whether the administrative action was erroneous in that it was arbitrary, capricious or involved an abuse of discretion. Arizona Board of Regents v. Superior Court, 106 Ariz. 430, 477 P.2d 520 (1970).
In his order of reversal, the trial judge stated that he found no evidence in the record to support either of the Board's conclusions, and therefore held that the Board had acted arbitrarily and in excess of its jurisdiction.
We are unable to concur in the trial judge's determination that there was no evidence to support the Board's findings. We have reviewed the record and find that the evidence clearly supports the Board's conclusion that Dr. Ferris has failed to submit proof that he has served an internship of at least one year accredited by the American Osteopathic Association (A.O.A.) or the equivalent of such internship. First we note that there was no contention that Dr. Ferris had in fact served the required internship "accredited by the American osteopathic association". However, he did contend that he had served "the equivalent of such internship" as permitted by § 32-1822, subsec. 3, par. c. To support this contention he relied upon his having served an internship accredited by the American Medical Association (A.M.A.), having completed one year in residency in radiology, a six month's residency in pathology, and having had some emergency room experience in St. Louis hospitals.
The statutory provision allows qualification on equivalency only upon the showing of an "equivalent of such internship [one accredited by the American Osteopathic Association] as determined by the board." The provision "as determined by the board" does not give the Board unlimited discretion in determining whether an applicant has complied with the statutory requirements. The exercise of discretion by the Board in making this determination is governed by the statutory standard that any training or experience relied upon as a substitute for an A.O.A. accredited internship must be equivalent to such an accredited internship.
In Rule 4 of its rules and regulations, the Board lists the type of training which the Board may consider as equivalent to *537 the one year internship requirement, as follows:
"RULE 4. INTERNSHIP EQUIVALENTS
"The following may be considered by the Board as equivalent to the one year internship requirement:
"A. One or more years of approved residency or other formal training, or,
"B. Certification by the American Osteopathic Association in one of the recognized speciality fields, or,
"C. Post-graduate studies and/or training deemed to have provided an equivalent amount of training, or,
"D. A minimum of ten years of continuous active practice immediately prior to application for licensure."
While this rule does not expressly state that the training relied upon as a substitute for the osteopathic internship must also be of an osteopathic orientation, the Board has interpreted the rule to contain this requirement, and we believe that the statute makes such an interpretation necessary.
At the hearing before the Board there was extensive evidence concerning osteopathic concepts, including that which involves diagnosing illnesses through the detection of osteopathic lesions with the hands and the administration of osteopathic manipulative therapy. The evidence demonstrated that osteopathic concepts distinctly set osteopathic medical training and practice apart from that of the M.D., or allopathic medical profession. It was shown that the osteopathic internship is considered the fifth year of an osteopathic physician's training, with the osteopathic concept being taught and practiced throughout the rotating internship.
The Osteopathic Postdoctural Training Requirements, Manual of Intern Training, (December 1968), incorporates the osteopathic concept, stating that:
"D. Teaching in Major Departments

"The discipline in all departments of the hospital should include and correlate the basic philosophy that the human body is a unit in which structure and function are mutually and reciprocally inter-dependent; that the body, through a complex equilibrial system, tends to be self-regulatory and self-healing; that adequate function of body systems depends upon the unimpeded flow of blood and nerve impulses; that the musculoskeletal elements comprise a body system, whose importance far exceeds that of providing framework and support; and that there are somatic components of disease which are not only manifestations, but also important contributing and/or maintaining factors, in the diseased area or distant from it. Among these somatic components are musculoskeletal dysfunctions, referred to as osteopathic lesions detectable by palpatory methods and treated by manipulation."
With regard to the department of Osteopathic Medicine, a required major department of the rotating internship, the Manual for Intern Training goes on to require that:
"This department should afford each intern adequate instruction and experience in general medicine. There should be special emphasis on the osteopathic concept in psychological, social, and somatic aspects of disease, and in such procedures as are commonly employed in the practice of osteopathic medicine." (Emphasis added).
This same requirement is also specified for other departments of the internship.
Dr. Ferris had the burden of showing that his training was the equivalent of the otherwise required one year osteopathic internship. He attempted to satisfy this burden by showing that he had served an internship sanctioned by the A.M.A. and had completed other M.D. training without any showing that these substitutes embraced training, experience or instruction in osteopathic concepts.
Dr. Ferris may, or may not, be generally qualified from an education standpoint to practice some form of the *538 healing arts in the state of Arizona. That is not the issue presented to this Court, nor was it the issued presented to the Superior Court or to the Board. The issue was and is whether Dr. Ferris is to be allowed to practice in this state as an osteopathic physician and surgeon, holding himself out to the public as one trained in osteopathic concepts. The Arizona legislature has clearly and unambiguously provided that before he may do so, he must comply with certain requirements evidencing training in osteopathic concepts, and these requirements are not synonymous with, and cannot be met by a showing of the completion of, the requirements imposed for licensure in some other branch of the medical profession.
The legislative intent and public policy in Arizona dealing with the M.D. and osteopathic practices is clearly that of separate professions, with separate licensure requirements. See A.R.S. § 32-1401 et seq., Medical Licensure, and A.R.S. § 32-1801 et seq., Osteopathic Medical Licensure. The statutory scheme governing each profession refers to the other profession as a separate profession. Thus, A.R.S. § 32-1421, subsec. 4, states that the M.D. chapter shall not "apply to or inhibit ... the lawful practice of ... osteopathic physicians and surgeons."; see also, A.R.S. § 32-1401, subsec. 9, which removes acts or persons not affected by the M.D. chapter from the definition of the practice of medicine, and A.R.S. § 32-1401, subsec. 10, par. l and A.R.S. § 32-1854, subsec. 11, each referring to "any of the other healing arts". Similarly, A.R.S. § 32-1821 states that nothing in the osteopathic chapter shall be construed to prevent the practice of any other method, system or science of healing by a person duly licensed therefor. Persons serving on each of the separate licensing boards must be M.D.'s on the medical board and osteopathic physicians on the osteopathic board, A.R.S. §§ 32-1402, subsec. B and 32-1801, subsec. B. Candidates for licensing in each profession must have the requisite medical training to become licensed M.D.'s and the requisite osteopathic training to become licensed osteopathic physicians, A.R.S. §§ 32-1423, 32-1822.
That the two professions may be "similar" is not a legal ground for ignoring the statutory requirement that in order to be licensed as an osteopathic physician in Arizona one must have served an internship accredited by the American Osteopathic Association or its factual equivalent. An internship or experience in a "similar" profession which lacks the distinguishing and vital osteopathic concept and osteopathic practice and training is not the factual equivalent of an osteopathic internship.
For the foregoing reasons we find that the record fully supports the Board's order denying licensure to Dr. Ferris upon the basis that he has failed to submit proof that he has served an internship of at least one year accredited by the American Osteopathic Association or the equivalent of such internship. We therefore reverse the judgment entered by the Superior Court and direct that the Board's determination be reinstated in full force and effect. Having arrived at this conclusion, we need not consider the sufficiency of the evidence to support the Board's finding that Dr. Ferris lacked the good moral character required by A.R.S. § 32-1822, subsec. 2, although we will comment that the evidence in this regard is not as convincing and conclusive as that supporting the Board's finding concerning the lack of osteopathic internship equivalency experience.
One further point remains to be discussed. Dr. Ferris contends that there is substantial evidence that the Board was biased and prejudiced against him and that therefore the Board's findings of fact and conclusions of law should be disregarded by the reviewing court. The Superior Court rejected this contention and did not include such a finding of bias and prejudice in its order reversing the Board's decision. We have reviewed the record and find no showing that the Board members were biased and prejudiced against Dr. *539 Ferris so as to interfere with the just and fair exercise of their statutory duties.
The judgment entered by the Superior Court is reversed with directions as hereinabove set forth.
JACOBSON, C.J., Division 1, and EUBANK, P.J., concur.