674 P.2d 891

In the Matter of Robert B. WICKMAN, D.O., Holder of License No. 687 for the Practice of Osteopathic Medicine and Surgery in the State of Arizona.

Robert B. WICKMAN, D.O., Plaintiff-Appellee,

v.

The ARIZONA STATE BOARD OF OSTEOPATHIC EXAMINERS, Defendant-Appellant.

No. 1 CA–CIV 6645.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 4, 1983.

Reconsideration Denied Dec. 8, 1983.

Law Offices of Donald Maxwell, P.C. by Donald Maxwell, Scottsdale, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by Charles E. Buri, Asst. Atty. Gen., Phoenix, for defendant-appellant.

## OPINION

BROOKS, Judge.

This is an appeal by the Arizona State Board of Osteopathic Examiners (board) from a judgment of the Maricopa County Superior Court reversing the board's order which had placed appellee Robert B. Wickman, D.O., on probation for unprofessional conduct and had ordered that he surrender certain certificates which had allowed him to prescribe narcotics and other controlled substances. Four issues are presented for review:

1. Whether a variance between the allegations of the complaint and the findings of the board required reversal of the board's decision.
2. Whether the decision of the board was supported by the evidence.
3. Whether the superior court erred in directing appellee's attorney to prepare findings of fact and conclusions of law.
4. Whether the superior court erred in failing to remand the matter to the board.

For the reasons hereafter stated, the judgment of the superior court is reversed.

## PROCEDURAL HISTORY

A complaint was filed with the board which contained the following pertinent allegations:

### IV

Richard O. McGill, D.O., in his capacity as Secretary-Treasurer of the Board of Osteopathic Examiners of the State of Arizona, has been informed and believes, and, upon such information and belief, alleges that the prescriptions, for narcotic and hypnotic drugs, described in the listing attached hereto and incorporated herein as Exhibit One, were issued, by Robert B. Wickman, D.O., for other than accepted therapeutic purposes.

### V

Prescribing narcotic and hypnotic drugs, for other than accepted therapeutic purposes, is a practice which does or might constitute a danger to the health, welfare or safety of the patient or the public.

### VI

The conduct and practice of Robert B. Wickman, D.O. described in Paragraph IV and V hereinabove constitute unprofessional conduct as that term, is defined in Arizona Revised Statutes § 32–1854(6) and (20).

The complaint concluded by requesting that appellee be found to have engaged in unprofessional conduct and that he be subjected to appropriate disciplinary action. Hearings were held and the board issued an order which contained the following finding of fact:

ROBERT B. WICKMAN, D.O. is guilty of prescribing narcotic and hypnotic drugs in such quantities that constitute a danger to the health, welfare and safety of patients and the public.

The board concluded that appellee had engaged in unprofessional conduct and placed him on probation for a period of five years directing that he surrender for cancellation his registration certificates for Class II and III controlled substances.

Following denial of his motion for rehearing, appellee filed a timely petition for review in the superior court pursuant to A.R.S. § 32–1856. The court thereafter made the following dispositive findings after having reviewed the transcript of proceedings before the board:

\* \* \* \* \* \*

2. On or about December 29, 1980, the Board of Osteopathic Examiners in Medicine and Surgery of the state of Arizona issued a summons and complaint charging

Robert B. Wickman with prescribing certain narcotic and hypnotic drugs for other than accepted therapeutic purposes.

3. The Board of Osteopathic Examiners, after a hearing on the matter, did *not* find that Dr. Wickman was prescribing certain narcotic and hypnotic drugs for other than therapeutic purposes, but found him guilty of prescribing such drugs in such quantities that constitute a danger to the health, welfare and safety of patients and the public, a matter which Dr. Wickman was not charged with doing. (emphasis in original)

\*   \*   \*   \*   \*   \*

6. No evidence was presented setting forth the accepted standard in the community for the prescribing of narcotic and hypnotic drugs by a licensed physician. On the contrary, the Board of Osteopathic Examiner's own medical expert, Dr. [James] Brooks, testified there was no standard with reference to the utilization of these drugs within the community.

7. A.R.S. Section 32–1855(C) specifically states that the Board of Osteopathic Examiners shall, in the complaint against a physician, set forth fully the conduct that such physician is being charged.

8. The Findings of Fact, Conclusions of Law and Order of the Board of Medical Examiners do not find Dr. Wickman guilty of any of the allegations of the formal complaint which was the basis of the hearing before the Board of Osteopathic Examiners and therefore such Findings of Fact, Conclusions of Law and Order violate A.R.S. Section 32–1855(C) and are arbitrary and constitute an abuse of discretion.

9. The Board of Osteopathic Examiners did not present any legal evidence, credible or otherwise, to substantiate any of the allegations in their complaint against Dr. Wickman.

Based upon the foregoing findings, the court entered judgment reversing the order of the board.

## FACTS

The evidence presented at the administrative hearing involved several courses of conduct. The testimony first disclosed that appellee, without any medical or therapeutic purpose whatsoever, had furnished a certain individual with numerous prescriptions for thousands of dosage units of various narcotic and hypnotic drugs. Appellee readily admitted this course of conduct but defended his actions on the grounds that he had issued these prescriptions under duress and in response to threats of harm against himself and his family.

The second factual setting involved prescriptions for drugs which were issued by appellee to two patients who were brother and sister, both of whom were suffering from terminal cancer.

In evaluating the prescriptions issued by appellee under the evidence presented at the time of hearing, Dr. Robert E. Gooch, D.O., testified that appellee's use of the drug Dilaudid was "awfully high" and "excessive". Dr. Albert L. Armstrong, D.O., stated that he would not consider it "appropriate" to prescribe the drug in such quantities. Dr. John P. Swartz, D.O., testified that the quantities were "extraordinary". Dr. James O. Brooks, D.O., testified that the drug Dilaudid had a high potential for distorting both physical and mental capacities and, in high dosages, can lead to respiratory pulmonary edema and cardiac arrest. He also testified as follows:

Q. Let me direct your attention then to what has been marked as Exhibit 4. Assume for the purpose of this question that the prescriptions reflected in that exhibit were written by the same physician, in your opinion would you consider the pattern of practice of prescribing reflected in that exhibit to be an over utilization of the drugs Dilaudid and Quaalude?

A. I really feel, every one of them, there is not one unless on one or two occasions there isn't any less than a hundred written at a time. It is very poor judgment for a physician to write this number to begin with unless he has a lot of documented information and the number

written in January—six months is very irregular practice in the community.

\* \* \* \* \* \*

A. The drugs are definitely being over utilized writing for a hundred at a time.

Q. In your opinion does over utilization of that nature constitute a danger to the health of the patients and the general public?

A. Any overuse of hypnotic or narcotics is a potential danger to the patient and the public.

Contrary to the findings of the superior court, Dr. Brooks did not testify that there was no standard within the community with reference to the utilization of the drugs in question. He only testified that there was no *written* standard as to the use of the drug Dilaudid.

Q. Is there a standard in the community with reference to terminal cancer patients that Dilaudid should not be used?

A. There is no written standard.

## VARIANCE BETWEEN ALLEGATIONS OF THE COMPLAINT AND FINDINGS OF THE BOARD

In its judgment, reversing the action of the board, the superior court noted that A.R.S. § 32–1855(C) (Supp.1982) provides that the board shall, in the complaint against a physician, fully set forth the conduct which is the basis of the complaint. The court further noted that the complaint charged appellee with having prescribed drugs for other than accepted therapeutic purposes; however, the board's order made no adjudication as to this specific allegation, but found that appellee had prescribed drugs in such quantities as to constitute a danger to the health, welfare and safety of patients and the public. The court thus concluded that there was a fatal variance between the allegations in the complaint and the dispositive findings of the board and that the board's order was thus arbitrary and constituted an abuse of discretion.

In its opening brief before this court, citing *Herzberg v. David,* 27 Ariz.App. 418, 555 P.2d 677 (1976), the board argues that the superior court was precluded from considering the alleged variance because this issue was not first raised before the board. It is argued that appellee thus failed to exhaust his administrative remedies.

■ Appellee failed to respond to this issue in his answering brief. If a debatable issue is raised on appeal, appellee's silence constitutes a confession of reversible error. *Burton v. Burton,* 23 Ariz.App. 159, 531 P.2d 204 (1975). We nevertheless choose to address the issue since our review of the record discloses that, while appellee did not present the issue of variance to the board in his written motion for rehearing, he did refer to it in his oral argument on the motion for rehearing.

■ Pleadings before administrative agencies are liberally construed and there may be no subsequent challenge of an issue which was actually litigated if there has been reasonable notice and an opportunity to cure surprise. *Kuhn v. C.A.B.,* 183 F.2d 839 (D.C.Cir.1950); *Swift and Co. v. United States,* 393 F.2d 247 (7th Cir.1968). The question on review is not the adequacy of the pleadings but the fairness of the entire proceeding before the administrative agency. *Perry v. Planning Comm'n.,* 62 Hawaii 666, 619 P.2d 95 (1980).

■ In the case at hand, appellee was clearly on notice that his alleged practice of prescribing narcotic and hypnotic drugs for other than *accepted* therapeutic purposes was in issue. Evidence was presented that appellee had not only prescribed narcotic and hypnotic drugs without any medical purpose whatsoever but that he had also issued prescriptions for such drugs in such *quantities* as to constitute a danger to patients and the public. At no time did appellee object to this line of testimony nor did he claim surprise or prejudice. To the contrary, appellee actively participated in cross-examination and called his own witnesses to refute the board's case against him.

We find that appellee was reasonably apprised of the issues in controversy and that he was given an adequate opportunity to meet the claims of the board and to justify

his conduct during the course of the hearing. Under these circumstances, we find no fatal variance between the allegations of the complaint and the finding of the board.

## SUFFICIENCY OF THE EVIDENCE

■ As this appeal was taken on the record of the administrative proceedings, the superior court was not in a position to weigh the evidence on which the board's decision was based nor to substitute its own discretion for that exercised by the board. *Arizona Board of Osteopathic Examiners v. Ferris,* 20 Ariz.App. 535, 514 P.2d 288 (1973). The scope of the superior court's review was limited to deciding whether the decision of the board was illegal, arbitrary, capricious or involved an abuse of discretion. *Sundown Imports, Inc. v. Arizona Department of Transportation,* 115 Ariz. 428, 565 P.2d 1289 (1977). Indeed, on judicial review of the decision of an administrative agency and when viewing the sufficiency of the evidence, courts should show a certain degree of deference to the judgment of the agency based upon the accumulated experience and expertise of its members. This judgment should not be readily interfered with. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 337, 436 P.2d 828 (1968). As provided in A.R.S. § 41–1010(A)(3) (Supp.1982) "the [administrative] agency's experience, technical competence and specialized knowledge may be used in the evaluation of evidence."

■ Considered in light of the foregoing principles, we do not concur in the superior court judge's determination that there was no evidence to support the board's findings. We have reviewed the record and find substantial evidence to support the board's conclusion that appellee had prescribed narcotic and hypnotic drugs in such quantities as to constitute a danger to the health, welfare and safety of patients and the public.

## ADMISSION OF HEARSAY TESTIMONY

While conceding that hearsay is admissible in administrative proceedings, *Begay v.*

*Arizona Department of Economic Security,* 128 Ariz. 407, 626 P.2d 137 (App.1981), appellee contends in his answering brief that the admission of certain hearsay testimony before the board was so inflammatory and prejudicial as to require reversal of the board's decision.[1] We first note that the superior court did not base its decision to reverse on the impropriety of this testimony or any resulting prejudice to appellee. Further, disregarding the hearsay testimony, the board's findings of fact were supported by competent evidence.

## THE REMAINING ISSUES

By reason of our disposition in this case we decline to address the remaining issues raised by the board.

## CONCLUSION

For the reasons stated in this opinion, the order of the superior court reversing the decision of the board is set aside and the matter is remanded with directions to affirm the board's order.

CORCORAN and CONTRERAS, JJ., concur.

---

1. A detective testified that the brother and sister with terminal cancer to whom appellee had issued numerous prescriptions were "known" narcotics dealers.