839 P.2d 1120

David Alan BERENTER,
Plaintiff–Appellant,

v.

Susan GALLINGER, Director of In-
surance of the State of Arizona,
Defendant–Appellee.

No. 1 CA–CV 90–0539.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 22, 1992.

Grant Woods, Atty. Gen. by H. Leslie Hall, Chief Counsel, Financial Fraud Div., and Charles R. Cohen, Asst. Atty. Gen., Phoenix, for defendant-appellee.

Frederick C. Berry Jr., P.C. by Frederick C. Berry Jr., Phoenix, for plaintiff-appellant.

## OPINION

GARBARINO, Judge.

An insurance adjuster appeals from a superior court judgment affirming an order of the Arizona Director of Insurance suspending his license and assessing a $2,500 civil penalty against him. The primary issues on appeal are: whether there is substantial evidence to support the order, whether the adjuster violated Ariz.Rev.

Stat. Ann. (A.R.S.) sections 20–316(A)(4) and (7), whether A.R.S. section 20–316(A)(7) is constitutional, and whether the administrative hearing provided due process of law. We find that the administrative order was properly affirmed by the trial court.

## I. FACTS

After their home was damaged by a fire on April 8, 1987, Jack and Marciane Condon (Condons) authorized Arizona Restoration Contractors (ARC) to perform emergency protection and restoration services for their personal property. The Condons, who were insured by Nationwide Mutual Fire Insurance Company (Nationwide), employed David Berenter (Berenter) as an adjuster to represent them in return for a fee of 18 percent of the total insurance proceeds recovered.

On April 17, 1987, ARC submitted an estimate and invoice to Berenter in the amount of $10,046.21. Berenter, doing business as Affiliated Group, submitted ARC's bill to Nationwide requesting immediate payment and received a draft payable jointly to ARC and Affiliated Group for the full amount requested.

On April 30, 1987, Berenter met with representatives of ARC with the Nationwide check in his possession. The parties disagreed whether Berenter was entitled to obtain his fee out of the check proceeds and Berenter left the meeting with the check. No monies were paid to ARC until August, 1987, after ARC filed a complaint with the Department of Insurance.

The Department of Insurance noticed a hearing alleging that Berenter had illegally withheld monies received in the course of his activities as a licensed insurance adjuster. The hearing officer found that on April 30, 1987, ARC was entitled to be paid for the work it had completed and that Berenter wrongfully withheld payment because ARC refused to permit him to deduct his fee from the check. She concluded that Berenter had violated A.R.S. section 20–316(A)(4) and (7) and that the violations were intentional.

Following the administrative proceedings, Berenter filed a complaint in superior court pursuant to the Administrative Review Act, A.R.S. sections 12–901 *et seq.* After the superior court's affirmance of the order, Berenter filed a notice of appeal in this court.

## II. STANDARD OF REVIEW

When an administrative decision is appealed to the superior court, the superior court decides only whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion. *Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prod., Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App.1990). This court reviews the superior court judgment to determine whether the record contains evidence to support the judgment. *Id.* Whether substantial evidence supports the decision is a question of law that is reviewed independently by this court. *Id.* at 387, 807 P.2d at 1123; *Sun Power of Arizona v. Arizona State Registrar of Contractors*, 166 Ariz. 437, 439, 803 P.2d 430, 432 (App.1990).

In the opening brief, Berenter criticizes all twenty-two findings of fact made by the hearing officer, on the grounds that they do not incorporate all pertinent evidence or because there is contradictory evidence. Neither the superior court nor this court weighs the evidence, but determines only whether there was substantial evidence to support the administrative decision. *Havasu Heights Ranch*, 167 Ariz. at 387, 807 P.2d at 1123. The purpose of judicial review of an administrative decision is not to decide whether the record supports appellant's version of the facts. We therefore do not address every factual dispute raised by Berenter.

## III. SUBSTANTIAL EVIDENCE

The crux of Berenter's argument is that he withheld the Nationwide check on the Condons' instructions because ARC had overcharged, had performed unnecessary cleaning, and had not completed all the required work. He contends that there is no credible evidence to support the finding that he withheld the insurance check to

coerce ARC into allowing him to obtain his commission from the check proceeds. We disagree.

Berenter expressed no dissatisfaction with ARC's work in his April 22, 1987 letter to Nationwide. He attached ARC's estimate and invoice to the letter and demanded immediate payment for the entire amount claimed by ARC. Similarly, Berenter did not question the amount of ARC's estimate or performance in his April 28, 1987 letter which reiterated his demand for payment. Both letters claim that Nationwide was obligated to make an immediate $10,046.21 payment on behalf of the Condons for ARC's services. The letters do not suggest any other claim for damages caused by the fire which would require further reimbursement or reduction by Nationwide.

Berenter testified that he was aware of ARC's "unauthorized work" as early as April 12 or 13, 1987. When asked about his failure to inform Nationwide of his concerns, he stated that, "I didn't have any specific objections until my April 30 meeting." When cross-examined about these statements, Berenter stated, "I realized that there were problems with billing, and I spoke with Mr. Frank Hestler about it. He told me not to worry, it was only an estimate." Berenter's alleged reliance on a statement that the invoice was "just an estimate" does not explain why he demanded that Nationwide make immediate payment for the full $10,046.21 which he represented as compensable under the policy.

There was conflicting testimony concerning what occurred on April 30, 1987, when Berenter and Mark Sanders (Sanders), an Affiliated Group employee, met with Ernest Vyrostek (Vyrostek), the owner of ARC, and Frank Hestler (Hestler), an ARC employee.

Hestler testified that the meeting was arranged as the result of a telephone conversation with Berenter during which Berenter informed Hestler that a check had been issued for ARC's restoration work. Hestler stated that during the meeting, Berenter wanted to deduct an 18–percent commission from the money ARC was to

receive for work on the Condons' property. Hestler described Vyrostek's anger in response to Berenter's request and Berenter's exit from Vyrostek's office. He testified:

> [M]r. Berenter just said, well, looks like we're not going to do business and be damned if you are going to get your money until this job closes down, and it is going to be down the road in four or five months—and he might have said six, but I know it was four or five months down the road when everything closes, and we're going to wait—or we're going to stretch it or wait as long as it takes to settle the account.

Hestler stated that he interpreted this and other comments by Berenter to mean that Berenter had no reason to pay ARC anything if he wasn't going to get anything out of it.

Vyrostek's description of the meeting was similar to Hestler's. He stated that Berenter never suggested that he was displeased with ARC's work on the Condons' property. He also testified that Berenter wanted his commission out of the Nationwide check and that when Vyrostek refused, Berenter left the office with the check.

Sanders' testimony varied somewhat from Hestler's and Vyrostek's. However, his testimony was consistent with Berenter requesting a commission from ARC. When asked whether Berenter wanted his commission from the Nationwide check, Sanders responded, "Mr. Berenter did not say that. That's—you could conclude that or you could not conclude that." He also observed that Vyrostek believed that Berenter wanted 18 percent of the Nationwide check and that after the conversation got heated, "Mr. Berenter told Mr. Vyrostek that if you want to play hardball, that would be fine. Mr. Vyrostek would receive his money when all the work was done."

The first writing indicating dissatisfaction with ARC's work for the Condons was a letter dated May 6, 1987, and delivered May 8, 1987, from Berenter to ARC. It instructed ARC to cease activities and questioned ARC's authority to restore all

of the Condons' property. However, on May 8, 1987, Mrs. Condon had inspected some of her personal items stored by ARC and signed a document acknowledging satisfaction with the work and authorizing Nationwide to make direct payment to ARC.

There was conflicting testimony concerning the execution of the Condons' authorization for direct payment to ARC. Mrs. Condon testified that she didn't read the document, made a very limited inspection of her property and did not understand what she was signing. Her testimony was contradicted by two ARC employees who were present during the inspection and execution of the document.

The hearing officer found that Mrs. Condon's age, poor health, admitted poor memory, and the hearing officer's own perception of Mrs. Condon's testimony led her to conclude that Mrs. Condon lacked credibility. Berenter argues that Mrs. Condon was the only unbiased witness and that the hearing officer erred by refusing to give great weight to her testimony.

It is not the prerogative of this court to determine the credibility of witnesses. *Van Emden v. Becker*, 6 Ariz.App. 274, 275, 431 P.2d 915, 916 (1967). The credibility of witnesses is a matter peculiarly within the province of the trier of fact in an administrative hearing. *Anamax Mining Co. v. Arizona Dept. of Econ. Sec.*, 147 Ariz. 482, 486, 711 P.2d 621, 625 (App. 1985). The hearing officer was not required to accept Mrs. Condon's explanation of the circumstances under which she signed the authorization form.

ARC complained to Nationwide that as of June 9, 1987, it had not been paid for any work on the Condons' property. Nationwide wrote to Berenter on June 16, 1987. In the letter, Nationwide noted that the Condons had authorized direct payment to ARC and requested Berenter to explain the withholding of payment. Berenter responded by letter dated June 22, 1987, in which he enclosed a June 19, 1987 letter from Mrs. Condon. The letter was addressed to Berenter and Nationwide and described problems between the Condons and ARC.

At the administrative hearing, there was evidence that Berenter had drafted the June 19, 1987 letter for Mrs. Condon's signature. Mrs. Condon's testimony was that the content of the letter was substantially hers. However, based on Mrs. Condon's relatively unsophisticated testimony and the language of the letter, the hearing officer found that "it is impossible to determine which portions of that letter are the product of Marciane Condon's independent thoughts."

ARC complained to Nationwide again on June 22, 1987, describing the April 30, 1987 meeting and stated that it had still not been paid. Nationwide wrote to Berenter on June 26, 1987, questioning why Berenter had demanded full payment of $10,046.21 to ARC in April and was now refusing to release the check. Nationwide also asked why Berenter and the Condons had not informed it of any dissatisfaction with ARC's performance. Nationwide wrote again to Berenter on July 1, 1987, requesting an explanation for his retention of the draft.

On July 21, 1987, Berenter returned the draft to Nationwide along with a letter demanding that no direct payment be made to ARC. He requested reissuance of two drafts, only one being jointly payable to ARC in the amount of $3,500. At that point, Nationwide contacted the insurance department, stating that it stood ready to disburse all funds owed to ARC.

Berenter finally forwarded a check for $3,500 to ARC on August 25, 1987, and $7,780.99 on September 28, 1987.

Even if there had been a genuine contract dispute between the Condons and ARC, there was evidence that this dispute was unrelated to Berenter's refusal to endorse the Nationwide check to ARC on April 30, 1987. The testimony of Vyrostek, Hestler, and Sanders; Berenter's written requests for payment from Nationwide; and the timing of the alleged contractual dispute all support the conclusion that the dispute was not the reason that Berenter retained the check. The evidence supports

a reasonable inference that the alleged contract dispute was conveniently raised after Berenter's argument with Vyrostek and was not the motivation for Berenter's actions.

There is substantial evidence in the record to support the hearing officer's conclusion that the only reason Berenter held the check was to pressure ARC to enable Berenter to get his commission from the check proceeds.

### IV. A.R.S. SECTION 20–316

Berenter contends that the hearing officer erred in finding that his conduct violated A.R.S. sections 20–316(A)(4) and (7).

■ A.R.S. section 20–316(A) authorizes the Arizona Director of Insurance to suspend, revoke, or refuse to renew licenses upon finding a violation of certain defined offenses including:

4. Misappropriation or conversion to his own use or illegal withholding of monies belonging to policy holders, insurers, beneficiaries or others and received in or during the conduct of business under the license or through its use.

. . . .

7. Conduct of affairs under the license showing the licensee to be incompetent or a source of injury and loss to, or repeated complaint by, the public or any insurer.

Berenter contends that he did not violate A.R.S. section 20–316(A)(4) because the statute relates only to situations in which a licensee misappropriates or converts monies belonging to others to his own use. He argues that because the Nationwide check was never cashed and he did not receive the proceeds, the statute is inapplicable to his retention of the check.

Berenter overlooks the statutory language which proscribes the "illegal *withholding* of monies belonging to ... others." (Emphasis added.) By refusing to endorse the Nationwide draft, Berenter prevented a party entitled to the proceeds from obtaining its money.

Although Berenter claimed that there was a dispute over monies owed to ARC,

Berenter conceded that ARC was entitled to at least a portion of the Nationwide draft on April 30, 1987. Berenter relies on his May 6, 1987 letter to ARC to show that ARC could have received partial payment at that time. However, his letter directs ARC to endorse the insurance draft and wait for Berenter to issue a check in an undetermined amount. When he wrote the letter, Berenter knew that ARC claimed the entire amount and that he had represented to Nationwide that ARC was owed that amount.

The director's order does not determine or discuss any payment dispute between the Condons and ARC. The order states that "it was very common for restoration firms to receive partial payments" and that "ARC could have been paid on April 30, 1987, for the work completed as of that date." Assuming that a genuine dispute had arisen concerning the proper amount of payment, Berenter could have informed Nationwide of the dispute and turned the check over to Nationwide to reissue and to include the Condons as co-payees. Instead, Berenter kept the check in his possession.

The director did not discipline Berenter based on the merits of a dispute over ARC's performance. She imposed sanctions based on evidence that Berenter used his position as the insureds' adjuster and his resulting status as a payee on the insurance draft as a tool to gain dominance over ARC. The testimony concerning Berenter's statements to Vyrostek on April 30, 1987, was sufficient to support the director's conclusion that Berenter was using his authority as an adjuster to delay the payment due ARC.

■ Berenter also contends that he was entitled to retain the insurance draft because he had a lien on the draft based on his contract with the Condons. An insured's partial assignment of insurance proceeds to an independent adjuster representing the insured has been held valid and enforceable. *See Home Ins. Co. v. Gigi Fashions, Inc.,* 267 F.Supp. 958 (D.N.J. 1967). An attorney or an adjuster securing the insurance proceeds to an insured may

be entitled to a lien on those proceeds. *Id.; see generally* 5A John A. Appleman and Jean Appleman, *Insurance Law and Practice,* § 3340 at 170 (1970). However, Arizona has not addressed whether an adjuster has a right to a retaining lien. Nationwide issued a check based on Berenter's representation that the full amount of the check was owed to ARC and later received written authorization from its insured to pay ARC directly. We do not find it necessary to reach this issue. If Berenter had lien rights in the Nationwide check proceeds, he should have informed Nationwide of the alleged lien. Berenter's assignment for 18 percent of the insurance proceeds was part of his contract with the Condons. Berenter had no direct contractual relationship with Nationwide or ARC. Nationwide's policy required it to pay for restoring property damaged by the fire. It was not obligated to protect Berenter by with-. holding 18 percent of its checks for the Condons' covered losses and paying it to Berenter. ARC had no obligation to protect Berenter's assignment.

Berenter's entitlement to 18 percent of the insurance proceeds was the measure of the fee which the Condons were obligated to pay him under their contract. Assuming that both Berenter and ARC had a right to receive fees from the Condons out of a draft issued by Nationwide, it was improper for Berenter to use his position as a payee on the check to obtain his commission out of proceeds in which both he and ARC claimed an interest.

Berenter also argues that the department had no jurisdiction to impose sanctions because A.R.S. section 20–316 does not require him to violate his clients' instructions nor sanction conduct of a disclosed agent acting on behalf of a disclosed principal. He concludes that because there was no violation of the insurance code, the department was without jurisdiction to conduct the hearing. Although presented as legal arguments, these are the same factual claims which were rejected by the hearing officer. The hearing officer found that Berenter did not withhold the Nationwide check based on his clients' instructions, but instead withheld the insurance check because he wanted a portion of the proceeds.

██ Berenter also contends that A.R.S. section 20–316(A)(7) is "unconstitutionally vague." A statute is unconstitutionally vague if it fails to give a person of normal intelligence reasonable opportunity to know what is prohibited and if it allows for arbitrary and discriminatory enforcement by failing to provide objective standards for those who are charged with enforcing the statute. *In Re Maricopa County Juvenile Action No. JS–5209 and No. JS–4963,* 143 Ariz. 178, 183, 692 P.2d 1027, 1032 (App.1984). However, due process does not require perfect notice, absolute precision, or impossible standards. A statute that gives fair notice of conduct to be avoided is not void for vagueness simply because it may be difficult to determine how far one can go before the statute is violated. *See Fuenning v. Superior Court,* 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983); *Knapp v. Miller,* 165 Ariz. 527, 531, 799 P.2d 868, 872 (App.1990).

██ Berenter has not claimed that he misunderstands the language of section 20–316(A)(7). He simply argues his version of the facts by stating that "one who is lawfully following his principal's instructions cannot constitute a source of injury or loss to anyone." Rather than supporting his claim that the statute is unconstitutionally vague, this argument demonstrates that Berenter is well aware of the meaning of the statute. It permits sanctions against licensees whose conduct injures members of the public. This provides adequate notice to the licensee and provides a standard for the administrative officer charged with enforcing the statute. In this case, there was evidence that Berenter had harmed ARC by withholding monies owed to ARC for services provided to the Condons. We find Berenter's attack on the constitutionality of A.R.S. section 20–316(A)(7) to be wholly without merit.

## V. DUE PROCESS

Berenter asserts that he was denied due process of law because the hearing was not conducted by an independent hearing offi-

cer, the department's procedures were unfair, and the notice of hearing was inadequate.

 Due process of law contemplates a "fair trial in a fair tribunal." *United States v. Superior Court*, 144 Ariz. 265, 280, 697 P.2d 658, 673 (1985) (quoting *In Re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)). The law is well established that absent actual bias, the combining of investigatory and adjudicatory functions does not violate due process. *See, e.g., Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *In Re Ackel*, 155 Ariz. 34, 38–39, 745 P.2d 92, 96–97 (1987); *Sigmen v. Arizona Dept. of Real Estate*, 169 Ariz. 383, 388, 819 P.2d 969, 974 (1991). *See generally*, Kenneth C. Davis, 3 *Administrative Law Treatise*, § 18:2 (2d ed. 1980). Therefore, Berenter's claim that he was entitled to a hearing officer who was not an agency employee is without merit.

 Berenter also contends that he was entitled to a peremptory challenge of the hearing officer. As authority for this position, he cites *Cain v. City Court*, 135 Ariz. 96, 659 P.2d 649 (1983).

In *Cain*, the Arizona Supreme Court found that because a trial de novo is not available on appeal from a city court for a *criminal* defendant, the defendant is entitled to a peremptory challenge to the city court judge as a matter of fairness. *Id.* at 97, 659 P.2d at 651. Berenter analogizes this case of an administrative appeal to a superior court case in which the party seeking review is not entitled to a trial de novo. He contends that there should be a similar right to a peremptory challenge of the administrative hearing officer.

The requirements of due process vary with the nature of the proceedings, the private and governmental interests at stake, and the risk that the procedure will lead to erroneous results. *In Re Maricopa County Juvenile Action JD–561*, 131 Ariz. 25, 27, 638 P.2d 692, 694 (1981). Berenter has not cited any regulation, statute, or case law holding that a party is entitled to a peremptory challenge of an administrative hearing officer as a due process right.

He relies instead on the rights accorded to criminal defendants on appeal.

However, it is well established that the interests of a criminal defendant require significantly more protection than civil litigants or parties to administrative proceedings. For example: the rules of evidence which are stringently applied to criminal trials are inapplicable to administrative hearings. A.R.S. § 41–1062; *see, e.g., Begay v. Arizona Dept. of Economic Sec.*, 128 Ariz. 407, 409–10, 626 P.2d 137, 139–40 (App.1981) (hearsay admissible and may be sole support of administrative decision; the Fifth Amendment privilege against self-incrimination in criminal proceedings is not applicable to civil actions and an administrative agency may draw an adverse inference from an assertion of the privilege); *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

In *Jenners v. Industrial Comm'n*, 16 Ariz.App. 81, 491 P.2d 31 (1972), this court rejected the petitioner's argument that A.R.S. section 12–409, which provides for a change of judge in superior court on the basis of an affidavit alleging bias and prejudice, is applicable to Industrial Commission hearings. We concluded that absent an applicable statute or administrative rule, procedural due process requires only that a hearing officer can be disqualified upon a showing of actual bias. *Id.* at 83, 491 P.2d at 33. As with appeals under the Administrative Review Act, petitioners in special actions from Industrial Commission decisions are not entitled to a trial de novo.

 We decline to extend the right of peremptory challenges to include administrative hearings. We find that due process does not require that a person facing the possibility that his professional license will be suspended or revoked by an administrative agency is entitled to a peremptory challenge of the agency hearing officer. Administrative officers are presumed to be fair and can be disqualified only upon a showing of actual bias. *Martin v. Superior Court of Maricopa County*, 135 Ariz. 258, 260, 660 P.2d 859, 861 (1983).

In *Havasu Heights Ranch and Dev. Corp.*, this court held that to show a disqualifying prejudice, a claimant can demonstrate that the mind of the decision maker is "irrevocably closed" or that the decision maker has prejudged the specific facts that are at issue. 167 Ariz. at 387, 807 P.2d at 1123 (citations omitted). Berenter has not shown prejudgment of his case by the hearing officer. He has argued only that the hearing officer improperly weighed the evidence and he has made general unsupported allegations about the institutional bias of the department. He does not identify any evidence in the record to support a claim of actual bias of the hearing officer or the director of insurance.

Berenter's final argument that he was denied due process is an assertion that he was sanctioned for an allegation that was not contained in the notice of hearing. He argues that the notice accused him of soliciting a "kickback" from ARC but the hearing officer rejected that claim. He therefore concludes that he was sanctioned for conduct not covered by the notice of hearing.

Pleadings before an administrative agency are liberally construed and there may be no subsequent challenge of an issue which was actually litigated if there has been reasonable notice and an opportunity to cure surprise. *In Re Wickman*, 138 Ariz. 337, 340, 674 P.2d 891, 894 (App.1983). The question for this court on a claim of error for discrepancies between the administrative complaint and the agency findings is not the adequacy of the pleadings but the fairness of the entire proceeding. *Id.*

The notice alleged intentional violations of A.R.S. section 20–316(A)(4) and (7) based on Berenter's withholding the Nationwide draft. It also alleged that the withholding was motivated by a dispute concerning "kickbacks." The director found that there was no evidence of "kickbacks" but that Berenter's motive was to extract money owed him from the insurance check. The complaint put Berenter on notice that his withholding of the Nationwide check was the subject of the inquiry and that his motives for the withholding of that check were in dispute. He did not claim surprise during the proceedings and actively participated in the hearing. We find no due process violation.

We affirm the judgment of the superior court and deny Berenter's request for attorneys' fees.

JACOBSON, P.J., and KLEINSCHMIDT, J., concur.