803 P.2d 430

**SUNPOWER OF ARIZONA,
Plaintiff/Appellant,**

v.

**ARIZONA STATE REGISTRAR OF CONTRACTORS, an agency of the State of Arizona; State of Arizona; John O. White, State Registrar of Contractors; Robert Worth, Chief Hearing Officer; M. Louise Stumph; and Lucile Kessler, Defendants/Appellees.**

**No. 2 CA–CV 89–0232.**

Court of Appeals of Arizona,
Division 2, Department A.

April 26, 1990.

Reconsideration Denied June 13, 1990.

Review Denied Jan. 23, 1991.

Rockafellow Law Firm by Lynn Eric Goar, Tucson, for plaintiff/appellant.

Robert K. Corbin, Atty. Gen. by Fred W. Stork, III and William V. Hornung, Tucson, for defendants/appellees.

## OPINION

HATHAWAY, Judge.

This appeal arises from the superior court's decision affirming the Arizona State Registrar of Contractor's (Registrar) order following a hearing requiring the appellant, Sunpower of Arizona, Inc. (Sunpower), to remove solar equipment it had installed and to return to appellees Stumph and Kessler the amounts they paid for the equipment and installation. Sunpower argues that the Registrar's order (1) exceeded its regulatory authority under A.R.S. § 32–1154; (2) was a violation of the separation of powers contained in article 3 of the Arizona Constitution; (3) appellee Kessler's complaint does not fall within the applicable statute of limitations as mandated by A.R.S. § 32–1155(A); and, (4) the transcript was incomplete, thus preventing proper review by the superior court.

## FACTS

In December 1985, appellees Stumph and Kessler contracted with Sunpower for the purchase of solar equipment and installation of it at their residences. The equipment was to provide additional hot water and all the heat for their residences. The installations were completed in June 1986. Appellees both filed written complaints with the Registrar on January 6, 1988, regarding the installation and operation of the solar heating equipment. On February 17, 1988, the Registrar sent a corrective work order notice to Sunpower for each complaint with directions to "[p]roperly repair/replace necessary components of solar hot water & heating system to ensure systems operate as designed." Sunpower did

attempt to repair the systems, but the promised result that the systems would independently provide a habitable degree of home heating was never achieved.

Subsequently, on July 28, 1988, the Registrar served Sunpower with a formal citation and complaint. An administrative hearing was held on September 29, 1988. The hearing officer made the following findings of fact which were adopted and approved by the Registrar:

\* \* \* \* \* \*

3. The agreed purchase price for each contract was ultimately paid in full. It is found by the weight of credible evidence that neither installation was completed or substantially completed more than two years before the filing of the respective separate complaints hereon [sic] on January 6, 1988. Consequently, any asserted defense based upon the expiration of the applicable statute of limitations must be rejected with respect to the specific contents of each complaint which, essentially, alleged that the systems, and in particular the last additions thereto, were not fit for the intended purposes for which they were represented and sold.

\* \* \* \* \* \*

5. It is determined that Complainants demonstrated by a preponderance of competent, probative and credible testimony that Respondent's sales representative, who is found to have possessed at least apparent authority, communicated express assurances to both Complainants which were intended to and which did, in fact, induce favorable action culminating in the contractural [sic] arrangements for the 1986 installation. These assurances generated the belief on the part of both the homeowners that the extra panel and storage tank to be added would improve upon their then-existing systems to such an extent that no back-up household system would be needed on a regular basis to heat the interior space within the residences. The evidence revealed that neither contract contemplated the furnishing or installing of added registers or the enlargement of those installed in 1984.

6. Although the systems' capabilities for heating the household water supplies continued to be adequate, very little, if any, improvement was experienced with respect to heating the interior space. In any event, the system, as augmented, was shown not to independently enable a habitable degree of heating in either home. . . .

Further, the Registrar adopted the hearing officer's conclusions of law establishing that Sunpower had violated the provisions of A.R.S. §§ 32–1154(A)(7) and (3), namely, A.C.R.R. R4–9–108, which details workmanship standards for contractors. The statute sets forth the grounds for suspension of a contractor's license:

A. The holder of a license pursuant to this chapter shall not commit any of the following acts or omissions:

\* \* \* \* \* \*

(3) Violation of any rule adopted by the registrar.

\* \* \* \* \* \*

(7) The doing of a wrongful or fraudulent act by the licensee as a contractor resulting in another person being substantially injured.

A.R.S. § 32–1154(A).

The hearing officer also concluded as a matter of law that the Registrar could impose conditions against Sunpower's contractor's license for the violations under A.R.S. § 32–1154(A). Therefore, on the facts of the case, the Registrar determined the appropriate and equitable remedy was the removal of the equipment and return of the full amount paid as a condition for Sunpower's continued operation under its contractor's license.

## STANDARD OF REVIEW

■ When reviewing a superior court judgment affirming administrative action, we will determine whether there is substantial evidence to support the decision. *Sundown Imports, Inc. v. Arizona Dep't of Transp.*, 115 Ariz. 428, 565 P.2d 1289 (App.1977). However, we will independently determine issues of law. *Havasu Heights Ranch and Dev. Corp. v. State*

*Land Dep't of State of Arizona,* 158 Ariz. 552, 764 P.2d 37 (App.1988); *Eshelman v. Blubaum,* 114 Ariz. 376, 560 P.2d 1283 (App.1977).

### REGULATORY AUTHORITY UNDER § 32–1154

Sunpower argues that the Registrar's order to remove the solar equipment it sold and installed and to return the monies paid for the sales and installations was outside the power granted by the legislature. The superior court found that the Registrar's action was contemplated by and within the scope of A.R.S. § 32–1154(B), which provides as follows:

> B. The registrar may ... temporarily suspend, with or without imposition of specific conditions ... any or all licenses issued under this chapter if the holder of the license ... is guilty of or commits any of the acts or omissions set forth in subsection A.

The Registrar contends the action taken was no more than temporarily suspending Sunpower's license with specific conditions attached, which is permitted by the plain language of the statute. The Registrar correctly points out, however, that Title 32, Chapter 10, 10 A.R.S., does not define "specific conditions."

█ Words contained in statutes are to be given their ordinary meaning unless the context in which they are used suggests another meaning. *Bianco v. Patterson,* 159 Ariz. 472, 768 P.2d 204 (App.1989). The narrow question here is the meaning intended by the legislature for the word "condition." Webster's New World Dictionary, College Edition, 1962, at 305, defines "condition" as "anything called for as a requirement before the performance, completion or effectiveness of something else."

█ "The purpose of the act [Title 32, Chapter 10, 10 A.R.S.] is to regulate the conduct of those engaged in the business of contracting so as to discourage certain bad practices which might be indulged in to the detriment of the public." *Security Ins. Co. of New Haven v. Day,* 6 Ariz.App. 403, 406, 433 P.2d 54, 57 (1967). The legislature designated in A.R.S. § 32–1154(A) its laundry list of bad practices for which disciplinary action could be taken against a licensee. The form of discipline is set forth in § 32–1154(B). The Registrar contends that to support its action, A.R.S. §§ 32–1154(B) and –1161(A) must be read together. Section 32–1161(A) provides for the renewal of licensee's rights after suspension of a license under § 32–1154 and states, in pertinent part:

> [T]he registrar shall renew it [contractor's license] upon proof of compliance by the contractor with provisions of the judgment relating to renewal ... or in the absence of a judgment or provisions therein as to renewal, upon proper showing that all loss caused by the act or omission for which the license was suspended has been fully satisfied.

The Registrar's order in the present case imposed the disciplinary conditions which Sunpower had to meet because of the loss caused by its salesman's fraudulent representations regarding the heating capability of the purchased solar equipment. Satisfaction of these conditions was required before Sunpower could renew its temporarily suspended license.

Sunpower appears to challenge the propriety of the order on the grounds that the conditions imposed are money damages and are not within the scope of the Registrar's regulatory powers. The cases cited as authority for this contention do not involve the same type of disciplinary action as in the present case. In *J.W. Hancock, Inc. v. Registrar of Contractors,* 126 Ariz. 511, 617 P.2d 19 (1980), the Registrar suspended the contractor's license for 60 days after finding a violation of A.R.S. § 32–1154. In *J.W. Hancock Enterprises, Inc. v. Arizona State Registrar of Contractors,* 142 Ariz. 400, 690 P.2d 119 (App.1984), the contractor was ordered to install proper insulation or have his license suspended. Indeed, in dicta, in the latter case, the court noted: "[t]he Registrar's power is limited to suspending or revoking a contractor's license, or attaching conditions to the license. Money damages may not be awarded." 142 Ariz. at 406, 690 P.2d at 125.

■ We do not adopt Sunpower's characterization of the return of the purchase and installation price as a recission. Rather, we believe the Registrar's order was a restitutionary remedy contemplated by the legislature as part of the Registrar's regulatory authority to take appropriate disciplinary action against those who violate the licensing standards. The historical notes to A.R.S. §§ 32–1154 and –1161 indicate that both were adopted from California. California administrative agencies commonly order restitution as a probationary term on a licensee as in *McKee v. Bell–Carter Olive Co.,* 186 Cal.App.3d 1230, 231 Cal. Rptr. 304 (1986) (even where administrative agency does not have the power to directly order payment of damages, power to conditionally suspend license until payment of reparation is made is the practical equivalent of such power). *American Funeral Concepts—Am. Cremation Soc'y v. California State Board of Funeral Directors and Embalmers,* 136 Cal.App.3d 303, 186 Cal.Rptr. 196 (1982) (license conditionally revoked; licensee subject to three hundred-day suspension on condition it make restitution); *Russell v. Miller,* 21 Cal.2d 817, 136 P.2d 318 (1943) (electrical contractor's license suspended until contractor made restitution to his client satisfactory to the registrar).

We believe the remedy ordered by the Registrar was a proper resolution of this contractual dispute because previous attempts to repair the system had failed to independently provide a habitable degree of home heating as represented by Sunpower's salesman. We find the California cases persuasive and find that the disciplinary action fashioned by the Registrar was contemplated by A.R.S. § 32–1154(B).

## CONSTITUTIONALITY

Sunpower argues that if the scope of the Registrar's power permits the remedy ordered, it results in a violation of the separation of powers of article 3 of the Arizona Constitution. Sunpower contends that the conditions were in fact a contractual recission and therefore only within the authority of the judicial branch.

■ The Registrar claims that the issue is whether the legislature has the authority to confer quasi-judicial powers upon an administrative agency, an issue that has been decided in the affirmative, citing *J.W. Hancock Enterprises, Inc. v. Arizona Registrar of Contractors, supra.* In that case, the court held "that the resolution of a bona fide contractual dispute, involving a licensed contractor, by the Registrar of Contractors ancillary to its regulatory mission, does not violate art. III." 142 Ariz. at 406, 690 P.2d at 125. The issue here is whether resolution encompassing restitutionary damages is outside the scope of administrative powers of adjudication. Our review of cases from other jurisdictions reveals that such awards are not unconstitutional. "The substantial trend of authority extends administrative powers of adjudication to encompass the award of damages. (citations omitted) We find nothing unconstitutional in the administrative award of damages under this statute where due process procedural rights have been protected, where prohibited conduct has been well defined by the governing statute, and where judicial review is available." *Kentucky Comm'n on Human Rights v. Fraser,* 625 S.W.2d 852, 855 (Ky.1981). Accord *McHugh v. Santa Monica Rent Control Bd.,* 49 Cal.3d 348, 261 Cal.Rptr. 318, 777 P.2d 91 (1989). We believe that in the present case, the statute provides the checks and protections necessary to prevent an unconstitutional grant of authority in violation of the separation of powers in article 3. We find no error.

## STATUTE OF LIMITATIONS

■ Sunpower argues that appellee Kessler never filed a complaint about the space heating system. Kessler's original complaint filed January 6, 1988, detailed the problems relating to the failure of the valves on the solar heating system which prevent water pipes from freezing. Sunpower contends that the specific issue of lack of heat was not raised until the hearing on September 29, 1988. It argues that pursuant to A.R.S. § 32–1155(A), Kessler's specific complaint was not raised within

two years of the act (installation of the solar heating equipment in June of 1986) which is the basis for the suspension.

The record reveals letters from Lucile Kessler received by the Tucson office of the Registrar on March 25 and May 9, 1988, plainly state that the system did not provide the heat promised, even after repair. It was neither arbitrary nor capricious to allow Kessler's claim. We find no abuse of discretion.

### INCOMPLETE TRANSCRIPT

■ Sunpower's final argument is that the decision must be overturned because a portion of one of the tapes recording the September 29, 1988, hearing was recorded over and the transcript on appeal to the superior court was therefore incomplete. Pursuant to A.R.S. § 12–910(B), Sunpower asserts that where a transcript is incomplete, a trial de novo must be granted. *Schmitz v. Arizona State Bd. of Dental Examiners*, 141 Ariz. 37, 684 P.2d 918 (App.1984).

The minute entry by the reviewing court provides that while there are 20 minutes of tape that could not be transcribed because they were taped over, there were 182 pages of testimony available for review. The court also recognized that while Sunpower offered suppositions of what the testimony might show, no firm offer of what the testimony did show was made.

A review of the record shows substantial evidence in the available transcript to "enable a meaningful judicial review." *Schmitz v. Arizona State Board of Dental Examiners*, 141 Ariz. at 40, 684 P.2d at 921. Accordingly, we find no abuse of discretion.

ROLL, P.J., and HOWARD, J., concur.