869 P.2d 1212

**CACTUS WREN PARTNERS, an Arizona General Partnership, d/b/a Desert Skies Mobile Home Park, Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF BUILDING AND FIRE SAFETY, an agency of the State of Arizona; Pat Amos; Lois F. Liebhart; Jane Magga; Frank Fotos; Violet Curtis; Don Blackwell; Betty Strebe; Cecelia M. Hopkins; Sharon**

**Sass Buick; Virgil Rawlings; Margaret Culkin; Matilda Safford; Dean K. Brown; John W. Schilling; Marie Dombek; B.C. Try; Marguerita Koss; and Dorothy Cholinski, Defendants–Appellees.**

No. 1 CA–CV 91–0263.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 14, 1993.

Review Denied April 5, 1994.

560

Parham & Cox by Michael A. Parham, Phoenix, for plaintiff-appellant.

Grant Woods, Atty. Gen. by Elizabeth J. Stewart, Asst. Atty. Gen., Phoenix, for defendant-appellee Arizona Dept. of Bldg. and Fire Safety.

Walter J. Reynolds, Jr., Mesa, for defendants-appellees Tenants.

OPINION

EHRLICH, Presiding Judge.

Cactus Wren Partners ("Cactus Wren") appeals from a superior court judgment determining that the adjudicative authority exercised by a mobile home parks hearing officer ("hearing officer") of the Arizona Department of Building and Fire Safety ("Department") did not violate Article III of the Arizona Constitution. It also appeals from the court's affirmation of the officer's directive to Cactus Wren to refund administrative fees and trash and sewage service charges it assessed its tenants. We conclude that the powers exercised by the hearing officer did not unconstitutionally infringe upon judicial authority nor deprive Cactus Wren of its right to a jury trial. We also affirm the order to Cactus Wren to refund its administrative fees and service charges.

*FACTS AND PROCEDURAL HISTORY*

The facts are not disputed. Cactus Wren operated the Desert Skies Mobile Home Park,[1] leasing spaces to tenants for mobile homes and charging them for sewage service and trash removal plus a monthly administrative fee. On October 13, 1989, the tenants filed a petition with the Department, alleging that Cactus Wren's charges for trash removal and sewage services prior to June 28, 1989, and the administrative fees violated the Arizona Mobile Home Parks Residential Landlord and Tenant Act ("Act"), Arizona Revised Statutes section ("A.R.S. §") 33–1401 *et seq.,* specifically A.R.S. §§ 33–1413(A),[2] 33–1413.-01[3] and 33–1414(A).[4]

Cactus Wren moved to dismiss the petition on the basis that the Department lacked authority. The Department's hearing officer denied Cactus Wren's motion to dismiss. After proceedings conducted on January 10 and 11, 1990, he also concluded that the sewage disposal and trash collection charges imposed prior to June 28, 1989, violated A.R.S. § 33–1413.01, and that the administrative fee was not rent and was "not provided for within the rental agreement" and therefore violated A.R.S. § 33–1413(A). The officer made provision for the refund or rental credit of such overcharges. The Department's director subsequently affirmed the officer's order and denied Cactus Wren's petition for rehearing.

Cactus Wren sought judicial review in the superior court on the record of the Department's order.[5] The court concluded that the adjudicative power exercised by the Department's hearing officer did not violate the separation of powers of Article III of the Arizona Constitution. It found the hearing officer's role to be to "adjudicate all matters relating to the Act" and "to ensure compliance with" it and decided:

1. Cactus Wren no longer owns the mobile-home park, having sold it to persons who are not parties to this action.

2. This statute explains the execution and contents of a rental agreement.

3. This statute defines the procedures by which a landlord may charge for certain utilities. It was amended effective June 28, 1989, to specifically allow mobile home park landlords to charge separately for trash removal and sewer services.

Thus the statutory scheme vests both quasi-judicial power in the Hearing Officer, adjudicating disputes arising under the Act, and regulatory authority, ensuring compliance with the Act. This legislative "blending of the powers" gives the Department, through its Hearing Officer, the primary, legitimate and regulatory power over the *entire relationship* between mobile home park landlords and tenants, including ensuring the parties' compliance with their respective duties imposed by the Act. [Emphasis original.]

The court further concluded that Cactus Wren's separate charges for trash removal and sewer services and the administrative fees were prohibited. Accordingly, it affirmed the Department's order directing Cactus Wren to reimburse the tenants. Cactus Wren timely appealed.

*DISCUSSION*

## I. Constitutionality of the Hearing Officer Function

### A. Article III

Cactus Wren maintains that the function of the Department's hearing officer to consider and resolve conflicts regarding the Act infringes unconstitutionally upon the powers of the judiciary. Specifically, it submits that the Department's hearing officer may only settle contract disputes between private parties and award restitutionary damages if this limited power is incidental to the Department's regulatory role, a role which it does not have because it neither licenses nor otherwise regulates mobile home parks.

It is well-established that a statute is presumed to be constitutional, a presumption which the party asserting the contrary prop-

4. The relevant portion of this statute enumerates prohibited provisions in rental agreements.

5. The Department, which was not a party at the hearing, was made a nominal party upon superior court review of its final decision as required by the Administrative Review Act. A.R.S. § 12–908; *see Burrows v. Taylor,* 129 Ariz. 212, 214, 630 P.2d 35, 37 (App.1981). It and the tenants filed separate answers and briefs.

osition must overcome. *E.g., State v. Ramos,* 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982); *Eastin v. Broomfield,* 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977). Then, in analyzing several statutes, we will read them together so as to give all significance if possible. *E.g., Dupnik v. MacDougall,* 136 Ariz. 39, 42, 664 P.2d 189, 192 (1983).

 Upon our review of a superior court's judgment affirming an administrative agency's order, we independently decide the issues of law. *E.g., Sunpower of Arizona v. Arizona State Registrar of Contractors,* 166 Ariz. 437, 439, 803 P.2d 430, 432 (App.1990). To begin our analysis, the Arizona Constitution provides:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Ariz. Const. art. III. The Constitution does not, however, require an absolute separation among the three departments; some "blending" of authority is permissible. *J.W. Hancock Enterprises, Inc. v. Arizona State Registrar of Contractors,* 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984). Consequently, an administrative agency may resolve disputes between private parties if this authority is auxiliary to and dependent upon the proper exercise of legitimate regulatory power. *Id.* at 404, 406, 690 P.2d at 123, 125; *see also Sunpower,* 166 Ariz. at 441, 803 P.2d at 434.

This analysis is not unique. For example, the California Supreme Court directs that an administrative agency may constitutionally hold hearings at which it determines facts and applies the law to those facts if:

> (i) such activities are authorized by statute or legislation and are *reasonably necessary* to effectuate the administrative agency's *primary, legitimate regulatory purposes,* and (ii) *the "essential" judicial power* (i.e., the power to make enforceable, binding judgments) *remains ultimately in the courts, through review of agency determinations.*

*McHugh v. Santa Monica Rent Control Board,* 49 Cal.3d 348, 261 Cal.Rptr. 318, 333, 335, 777 P.2d 91, 106, 108 (1989) (emphasis original).

Separation concerns are resolved not "by mechanistic formulas, but by ad hoc determinations focused on insuring sufficient checks and balances to preserve each branch's core functions." *J.W. Hancock,* 142 Ariz. at 405, 690 P.2d at 124. In *J.W. Hancock,* this court adopted a test proposed in *State ex rel. Schneider v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976), to analyze a separation-of-powers claim, such as determining whether a legislative scheme which confers upon an administrative agency adjudicative powers unconstitutionally infringes upon those of the judiciary. The test suggests consideration of the following, non-exclusive factors: (1) the "essential nature" of the power exercised; (2) the degree of control exercised by the agency in the exercise of the power; (3) the legislature's objective in establishing the agency's functions, and (4) the practical result of the mingling of roles. *Id.*

The executive authority at issue in this case is that attributed to the Department's hearing officer, who is empowered to consider and decide matters relating to obedience to the Act. *See* A.R.S. §§ 41–2198, 41–2198.-03. To determine whether the hearing officer's role constitutes an unconstitutional usurpation of judicial authority, we must examine the relationship of the Department and its hearing officer to the administration of mobile home parks.

> The Department was established to
>
> further the public interest of safety and welfare by maintaining and enforcing standards of quality and safety for manufactured homes, mobile homes, ... It is also the purpose of the department to establish a procedure to protect the consumer of such products and services.

A.R.S. § 41–2141(A). Consistent with this objective, a hearing officer function was created within the Department to "adjudicate complaints regarding and ensure compliance with" the Act. A.R.S. § 41–2198; *see also* A.R.S. § 41–2198.03. In turn, the expressed purposes of the Act are "[t]o simplify, clarify

and establish the law governing the rental of mobile home spaces and rights and obligations of landlord and tenant" and "[t]o encourage landlord and tenant to maintain and improve the quality of mobile home housing." A.R.S. § 33–1402. Within the statutory scheme of the Act are provisions regarding the terms and conditions of the rental agreement, A.R.S. § 33–1413, and the landlord's obligation to maintain "fit and habitable" premises, including the removal of garbage and other waste and the provision of an outlet for sewer services. A.R.S. § 33–1434(A).

The hearing officer's authority to conduct proceedings is found in A.R.S. § 41–2198.01, which permits a person subject to or a party to an agreement under the Act to file a petition with the Department against a respondent, another private party, for alleged violations of the Act. Such action leads to an adjudicatory proceeding with an order to follow. A.R.S. §§ 41–2198.01, 41–2198.02. A hearing officer's order is binding unless the Department director grants a rehearing. A.R.S. § 41–2198.02(B). A petition for rehearing is required to preserve further appellate review. A.R.S. § 41–2198.04(A). Then review of the director's decision is available in the superior court pursuant to the Administrative Review Act, A.R.S. §§ 12–901 through –914. A.R.S. § 41–2198.04(E).

■ We conclude that the hearing officer function within the Department does not usurp the authority of the judiciary. The first of the *J.W. Hancock* considerations is easily resolved; there is no doubt that the essential nature of the power exercised by the Department through its hearing officer is judicial. The hearing officer hears and resolves disputes between tenants and landlords, such as Cactus Wren, regarding the Act. "Generally the adjudication of a dispute between two private parties is considered judicial." *J.W. Hancock*, 142 Ariz. at 406, 690 P.2d at 125.

The second factor also is easily decided. The hearing officer function is not such that it constitutes a "coercive influence" upon the judiciary. *Id.* at 405, 690 P.2d at 124, quoting *Bennett*, 547 P.2d at 792–93. To the contrary, judicial review of the Department's decision is afforded a party by means of the Administrative Review Act, A.R.S. §§ 12–901 through –914, 41–2198.04(E), a critical judicial "check" of administrative power. *See Sunpower*, 166 Ariz. at 441, 803 P.2d at 434; *McHugh*, 261 Cal.Rptr. at 334, 777 P.2d at 107.

Third, regarding the nature of the legislature's objective, A.R.S. § 41–2198 permits a hearing officer to preside over and decide matters relating to the Act. *See also* A.R.S. § 41–2198.03. This power supplements the Department's mission as expressed in its statutory purpose and that of the Act. *See* A.R.S. §§ 33–1402, 41–2141(A). While the Department does not license mobile home parks, it has other legitimate regulatory responsibilities which may, in the opinion of the legislature, make formal licensure unnecessary. *See McHugh*, 261 Cal.Rptr. 310, 777 P.2d 91 (although board established by municipality was not licensing agency, it legitimately regulated landlords by setting and regulating maximum rents in housing market).

Finally, as a practical matter, the Department's objective of administering compliance with the Act is furthered by inclusion of its hearing officer function. This purpose would be less easily met if matters relating to the Act were left to the judicial process. *See J.W. Hancock*, 142 Ariz. at 406, 690 P.2d at 125; *Batty v. Arizona State Dental Board*, 57 Ariz. 239, 251, 112 P.2d 870, 875–76 (1941) (dental board could determine disputed facts in regulating licensed dentists). "[T]he limited ancillary power to construe contracts does not threaten the core functions of the courts." *J.W. Hancock*, 142 Ariz. at 406, 690 P.2d at 125. Any necessity for the courts to intervene in resolving landlord-tenant disputes is preserved by the provisions of the Administrative Review Act. A.R.S. §§ 41–2198.04(E), 12–901—914.

The propriety of our resolution is exemplified by this case. "Rent" is broadly defined as a "payment[ ] to be made to the landlord or designated agent in full consideration for the rented premises." A.R.S. § 33–1409(24); *see also* A.R.S. § 33–1409(25) (defining "rental agreement"). The present case involves a

dispute about the terms of the rental, whether charges for sewage disposal and trash collection as well as a monthly administrative fee are permitted. As was said, the Act requires the landlord to "[p]rovide for removal of garbage, rubbish, and other waste incidental to the occupancy of the mobile home space" and a sewage outlet. A.R.S. § 33–1434(A). While the provision of these services is not in dispute, the fees and costs for furnishing them is a matter of conflict. This puts at issue the amount of the rent, as well as the notice and conditions of the agreement, A.R.S. § 33–1413(A), (C), matters as appropriately heard and resolved by a hearing officer akin to an agency administrative law judge subject to judicial review as by a member of the judicial branch in the first instance.

### B. Article II

■ Cactus Wren next maintains that the statutory scheme of A.R.S. § 41–2198 *et seq.* deprives it of the right to a jury trial as guaranteed by Article II, Section 23 of the Arizona Constitution. Again, we independently decide this legal contention, *Sunpower*, 166 Ariz. at 439, 803 P.2d at 432, and find no such denial.

In *Sunpower*, Division Two of this court decided that the Registrar of Contractor's award of restitutionary damages, a refund of the amount paid for equipment and its installation, was not outside the scope of administrative adjudicatory authority. *Id.* at 441, 803 P.2d at 434. However, the court did not discuss this issue in the context of Article II.

The California Supreme Court has concluded that administrative adjudication of monetary-relief claims did not violate the state constitutional right to a jury trial which, similar to Arizona's guarantee, makes inviolate the right of a trial by jury. *McHugh*, 777 P.2d at 111–112, 116. The court went on to recognize, however, that if the agency was adjudicating claims in which recovery of damages was the primary focus, as opposed to an "incidental aspect of the regulatory scheme," its decision might be different. *Id.* at 113, n. 53.

In the present case, the superior court relied on *McHugh* to disagree with Cactus Wren's assertion that it was denied a constitutional right when it was obliged to defend a damage suit in front of a hearing officer without benefit of the rules of evidence. The court stated that "where remedial restitutive power is concerned, the right to a jury trial does not preclude administrative adjudication." Because we hold that the Department's authority, as exercised through its hearing officer function, does not usurp the power of the judiciary, and because the court's order directing reimbursement of charges was simply restitutive, we agree with the court in *McHugh* and conclude that the Department's adjudication of the tenants' petition did not violate Article II. *See Walnut Creek Manor v. Fair Employment and Housing Commission*, 54 Cal.3d 245, 284 Cal.Rptr. 718, 728, 814 P.2d 704, 714 (1991) (restitutive damages defined as quantifiable amounts of money due an injured party to compensate for pecuniary loss resulting from another's violation of laws).

### II. Propriety of Fees and Charges

■ When reviewing a superior court's decision as to whether an administrative action was illegal, arbitrary, capricious or an abuse of discretion, we determine whether the record supports the court's judgment. *Berenter v. Gallinger*, 173 Ariz. 75, 77, 839 P.2d 1120, 1122 (App.1992) (citing *Havasu Heights Ranch and Development Corporation v. Desert Valley Wood Products, Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990)).

### A. Administrative Fees

Cactus Wren maintains that it could impose on the tenants a monthly administrative fee of $1.20. While it essentially concedes that this fee was not included in the rental agreements, it insists that certain tenants of long duration nonetheless had notice of the monthly fee and thus were obliged to pay it. The hearing officer concluded that this fee was not rent nor was it provided for by any agreement and therefore could not be assessed. On review, the superior court agreed that the fees were neither provided for by the rental agreement nor mentioned otherwise, and concluded, as had the hearing

officer, that their imposition was in violation of A.R.S. § 33–1413(A).

While nothing in the Act prohibits Cactus Wren from assessing an administrative fee upon notice to its tenants, *see* A.R.S. §§ 33–1413(A), (C), (G), 33–1414, 33–1432(E), the hearing officer's and the superior court's determinations that the fee was not included in the rental agreements imply that the tenants lacked the requisite knowledge of its imposition. Despite its contention that the "record is clear" that proper notice of the administrative fee was given, Cactus Wren has not included in the record either the rental agreements or a transcript of the two-day administrative hearing. *See* Ariz.R.Civ.App. Proc. 11(b)(1); *see also Plattner v. State Farm Mutual Automobile Insurance Company,* 168 Ariz. 311, 319, 812 P.2d 1129, 1137 (App.1991) (appellant's burden to include documents necessary to argument on appeal in record). Accordingly, we are unable to determine the correctness of the earlier decisions regarding the administrative fees and must accept that the hearing officer and superior court were correct. *See, e.g., Cooper v. Cooper,* 167 Ariz. 482, 487, 808 P.2d 1234, 1239 (App.1990).

### B. Service Charges

 Cactus Wren also argues that the hearing officer and the superior court erroneously interpreted A.R.S. § 33–1413.01 to exclude sewer services and trash removal as utilities for which a landlord may charge separately. The hearing officer concluded that Cactus Wren's charges for sewer and trash services prior to June 28, 1989, whether through separate billing or any rent increase for such purpose, violated A.R.S. § 33–1413.01. On review, the superior court applied principles of statutory construction to subsections A and C of that statute and held that Cactus Wren could not charge separately for sewer and trash removal services prior to that day, the effective date of subsection C.

In considering whether Cactus Wren's charges for sewer and trash services were illegal, however, the hearing officer and superior court erred in two respects: They both were mistaken in their references to costs in A.R.S. § 33–1434(A)(5) and (6), concerning the landlord's duties to provide for the removal of trash and furnish an outlet for sewer services; the statute is silent on the question, making no provision as to if or how such costs can be recovered by a landlord. Also, both erred in not differentiating between trash and sewer services, deciding instead that neither service was a utility within the meaning of A.R.S. § 33–1413.01. However, those services encompassed by the word "utility" at the very least do include sewer services. *See Cogent Public Service, Inc. v. Arizona Corporation Commission,* 142 Ariz. 52, 688 P.2d 698 (App.1984). Regardless, although the errors can be ascertained, due to the state of our record, we are unable to resolve whether the service charges were proper; the record upon which the hearing officer and superior court decided the case is not the record submitted to this court.[6] On the record provided to us, we cannot discern the nature and form of the charges, and cannot determine if the rental agreement or any other accord correctly distinguished between the two services. We thus have no choice but to affirm this portion of the judgment of the superior court.

### CONCLUSION

For the foregoing reasons, the judgment of the superior court is affirmed.

GARBARINO and JACOBSON, JJ., concur.

---

**6.** The hearing officer in his findings makes explicit reference to testimony from the parties and others, and exhibits submitted by the parties as well as at least one letter from an attorney addressed to a member of the Arizona legislature, none of which are in the appellate record.