216 P.3d 1203

**STATE of Arizona, Appellee,**

**v.**

**Santos Alberto SILVA, Jr., Appellant.**

**No. 1 CA–CR 07–0591.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 22, 2009.

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Craig W. Soland, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Edith M. Lucero, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to decide whether the superior court had authority to decide that Santos Alberto Silva, Jr. ("Silva") was competent to be tried for first degree murder even though he was found incompetent three separate times and the cumulative time he spent in a restoration program exceeded twenty-one months. We find no error.

## PROCEDURAL BACKGROUND

¶ 2 Silva was indicted on December 22, 1999, for first degree murder after he stabbed his wife to death. The State sought the death penalty, and alleged that the murder was committed in an especially cruel, heinous or depraved manner as an aggravating factor.

¶ 3 During pretrial proceedings, Silva was committed to the Arizona State Hospital ("ASH") on three separate occasions for treatment to restore his competency. The first occurred on February 9, 2001, when the trial court granted Silva's motion for a competency proceeding pursuant to Arizona Rule of Criminal Procedure 11. He was found incompetent to stand trial because of major depressive disorder with psychotic features and was committed to ASH for treatment to restore his competency. Based on the subsequent reports from ASH, the court found on February 12, 2002, that Silva had been restored to competency, and the criminal proceedings resumed. He had been in treatment for restoration for 245 days.

¶ 4 Silva's second motion for a Rule 11 evaluation was granted on January 17, 2003. The court found Silva incompetent six months later and committed him to ASH for restoration treatment. The court found on January 13, 2004, some 179 days later, that his competency had been restored.

¶ 5 Silva requested a third Rule 11 evaluation on January 12, 2005. He was found incompetent on July 18, 2005, and was ordered to be recommitted to ASH for restoration treatment. Following an evidentiary hearing, the court, on January 26, 2007, found that Silva's psychiatric condition had been stabilized and that he was again competent to stand trial. The restoration efforts

lasted 557 days, or slightly more than eighteen and one-half months.

¶ 6 Silva was tried and found guilty. The jury also found that the offense was committed in an especially cruel, heinous or depraved manner, but recommended a life sentence. Silva was sentenced to natural life without possibility of release. We have jurisdiction over his appeal pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(1) (Supp.2008).

## DISCUSSION

¶ 7 In *Nowell v. Rees*, 219 Ariz. 399, 406, ¶ 21, 199 P.3d 654, 661 (App.2008), we held that the trial court may not order the accused committed for restoration treatment for longer than twenty-one months when he is found incompetent to stand trial. Relying on *Nowell,* Silva argues that the trial court did not have authority to determine that he was competent to stand trial because, by the conclusion of the third court-ordered commitment period, he had been subjected to more than thirty-two months of restoration treatment. He contends that his trial was fatally flawed because there was not a valid finding that he had been restored to competency after a twenty-one month cumulative period. We disagree.

### I

¶ 8 Initially, Silva attempts to characterize his claim as one of subject matter jurisdiction. Because subject matter jurisdiction is an issue of law, we review it de novo. *State v. Flores,* 218 Ariz. 407, 410, ¶ 6, 188 P.3d 706, 709 (App.2008).

¶ 9 "[T]he 'existence of subject matter jurisdiction is determined by the general nature of the charge contained in the complaint.'" *State v. Foster,* 191 Ariz. 355, 357, ¶ 6, 955 P.2d 993, 995 (App.1998) (quoting *State ex rel. Baumert v. Municipal Court,* 124 Ariz. 543, 545, 606 P.2d 33, 35 (App.

1979)). Unlike errors that occur during trial, subject matter jurisdiction is never waived and can be raised for the first time on appeal. *Id.*

¶ 10 The Arizona Constitution provides that the superior court "shall have original jurisdiction" over felony criminal cases. Ariz. Const. art. 6, § 14(4). The Legislature, moreover, gave the superior court "exclusive jurisdiction over all competency hearings." A.R.S. § 13–4503(D) (2001); *see also* Ariz. R.Crim. P. 11.2(d). Thus, once Silva was indicted for first degree murder the superior court properly exercised its jurisdiction over the criminal proceedings. And, once Silva asked the superior court to determine his competency to stand trial and the court found that there were reasonable grounds for further competency proceedings, the superior court properly exercised its "exclusive jurisdiction over all competency hearings." Consequently, the superior court had jurisdiction over the case and competency proceeding. Because the superior court had subject matter jurisdiction to determine whether Silva was competent to be tried, we review his claim for legal error.

### II

¶ 11 Silva, unlike *Nowell* who challenged the efforts to continue restoration treatment and then filed a special action, 219 Ariz. at 402, ¶¶ 4, 6–7, 199 P.3d at 657, never objected to the competency proceedings or to the orders which found him competent to stand trial. He did not challenge the superior court's authority to determine his competency to stand trial, whether by a motion to dismiss or special action, and never challenged the fact that he had spent cumulatively more than twenty-one months in restoration treatment. As a result, we only examine the issue for fundamental error. *State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). To obtain relief, Silva must prove both fundamental error and actual prejudice. *Id.* at ¶ 20. Before reviewing for fundamental error, we must first find that error occurred. *State v. Lavers,* 168 Ariz.

376, 385, 814 P.2d 333, 342 (1991). Here, we find no error.

## A

¶ 12 The procedures and processes to determine competency of a criminal defendant are found in rules implemented by our supreme court. *See* Ariz. R.Crim. P. 11.1 to 11.6. The procedures delineated in the Rules of Criminal Procedure have been further codified in A.R.S. §§ 13–4501 to –4517 (2001 and Supp.2008). Together, these rules and statutes govern proceedings for the determination of competency and court-ordered restoration treatment in criminal prosecutions.

¶ 13 When we review rules and statutes, we follow the general principles of statutory construction. *Patterson v. Mahoney*, 219 Ariz. 453, 456, ¶ 9, 199 P.3d 708, 711 (App.2008). Specifically, we first examine the language of the statute or rule and if the language is clear and unequivocal, it is determinative of the statute's meaning. *Id.* If there is a conflict between a statute and a rule, we will attempt to harmonize them. *Id.*

¶ 14 The rules and statutes concerning the competency process do not conflict. They provide that a person may not be tried, convicted, sentenced or punished for an offense while, as a result of a mental illness, defect, or disability, the person is unable to understand the proceedings or assist in his defense. A.R.S. §§ 13–4501(2), –4502(A) (2001); Ariz. R.Crim. P. 11.1. When reasonable grounds exist to question the defendant's competency, the trial court must appoint mental health experts to examine the defendant and hold a hearing to determine whether the defendant is competent to stand trial. A.R.S. §§ 13–4505 (Supp.2008), –4510(A) (2001); Ariz. R.Crim. P. 11.3(a), 11.5(a).

¶ 15 If the defendant is found competent to stand trial, the criminal proceedings shall continue without delay. A.R.S. § 13–4510(B); Ariz. R.Crim. P. 11.5(b)(1). If the defendant is found incompetent to stand trial, the trial court must decide whether to order treatment to restore competency. *Nowell,* 219 Ariz. at 404, ¶ 16, 199 P.3d at 659. Restoration treatment is the preferred course; dismissal of the charges should only occur when "there is clear and convincing evidence that the defendant will not be restored to competency within fifteen months." A.R.S. § 13–4510(C); *see also* Ariz. R.Crim. P. 11.5(b)(2), (3). The trial court may extend the time for restoration treatment an additional six months "if the court determines that the defendant is making progress toward the goal." A.R.S. § 13–4510(C). Rule 11.5(b)(2) also provides that if "there is no substantial probability that the defendant will become competent within 21 months of the date found incompetent," upon the request of any party, the trial court must remand the defendant for civil commitment proceedings, appoint a guardian, or order defendant released and dismiss the charges without prejudice. Ariz. R.Crim. P. 11.5(b)(2); *see also* A.R.S. § 13–4517 (2001); *Nowell,* 219 Ariz. at 406, ¶ 21, 199 P.3d at 661.

¶ 16 During treatment to restore a defendant's competency, the trial court is required to conduct periodic reviews of the defendant's competency. A.R.S. § 13–4514(A) (2001); Ariz. R.Crim. P. 11.5(d). If after receiving restoration treatment the defendant is found to have regained competency, the regular proceedings shall commence again. A.R.S. § 13–4514(D); Ariz. R.Crim. P. 11.6(c).

¶ 17 The procedures for restoration efforts, including the twenty-one month limit on such efforts, were explicitly enacted to comply with the United States Supreme Court's decision in *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). *See* Comment to Rule 11.5(b). In *Jackson,* the Court held that indefinite commitment of a criminal defendant due to incompetency to stand trial violates equal protection and due process. 406 U.S. at 730–31, 92 S.Ct. 1845. The Court did not prescribe a specific time limit on restoration efforts by the criminal court or require dismissal of the charges. *Id.* at 738, 92 S.Ct. 1845. Instead, the Supreme Court

held that when an incompetent defendant cannot attain competency in a reasonable time, "the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Id.*

**B**

¶ 18 Silva's claim of error conflates the authority to order restoration treatment with authority to determine competency. The twenty-one month limit in the statute and rule governing competency proceedings applies only to restoration treatment orders during an accused's incompetency, not the superior court's authority to determine competency. *See* A.R.S. §§ 13–4512(I)(1), –4515(A) (Supp.2008); Ariz. R.Crim. P. 11.5(b). As we recognized in *Nowell*, after twenty-one months of restoration treatment, the superior court has three options if the defendant has not regained competency: to refer defendant for civil commitment proceedings, appoint a guardian, or dismiss the charges and release the defendant. 219 Ariz. at 407, ¶ 27, 199 P.3d at 662; *see also* A.R.S. § 13–4517; Ariz. R.Crim. P. 11.5(b)(2). If the prosecution is not dismissed and the defendant is directed to receive further restoration treatment through either civil commitment or appointment of a guardian, the superior court needs to have continuing authority to rule on the issue of the defendant's competency after the twenty-one month limit on restoration treatment orders in the criminal proceeding. This authority is explicitly provided in Rule 11.6(a)(4), which permits the trial court to redetermine competency "at any time." Accordingly, Silva's contention that the trial court lacked authority to make the January 2007 finding that he was competent to stand trial is undermined by the statute and rule that gives the court continuing authority over competency matters.

**C**

¶ 19 Finally, we examine Silva's claim that he cannot be held for more than twenty-one months of cumulative restoration treatment pursuant to our holding in *Nowell*.

¶ 20 In *Nowell*, the court found the defendant incompetent in November 2004 but believed he could be restored and assigned a restoration treatment provider. 219 Ariz. at 401, ¶ 2, 199 P.3d at 656. At the hearing to determine whether treatment had been successful and the defendant restored to competency, the court found that the defendant remained incompetent. *Id.* at 401–02, ¶ 2, 199 P.3d at 656–57. At a subsequent hearing, and based on the report of a different provider, the court found that the defendant had been restored and the case was returned for trial. *Id.* at ¶¶ 2–3.

¶ 21 Nowell filed a special action, and we vacated the competency determination and remanded the case for a new competency determination because the provider's report merely disagreed with the prior experts but did not explain that restoration efforts were effective. *Id.* at 402, ¶ 4, 199 P.3d at 657. On remand, a new expert disagreed with the prior report, and the court found that the defendant remained incompetent. *Id.* at ¶ 5.

¶ 22 Nowell then filed a motion to dismiss and argued that the statute and rule required the action be dismissed because he had not been restored within twenty-one months. *Id.* at ¶ 7. The court disagreed, and found "when a court finds that the doctor's report is not persuasive, the court must make a new finding that the defendant is not competent and restorable, starting the process anew." *Id.* at 403, ¶ 8, 199 P.3d at 658. Nowell then filed another special action.

¶ 23 After we examined the competency statutes and rules, we stated that "[w]e cannot ignore the repeated statutory references to restoration of competency within twenty-one months after the date of the *original finding* of incompetency." *Id.* at 406, ¶ 21, 199 P.3d at 661. After finding that the statutes mean what they say, we stated that "[i]f a defendant has not regained competency within twenty-one months of the original finding of incompetency, no further attempts at restoration are allowed." *Id.*

¶ 24 Although Silva argues that *Nowell* applies, *Nowell* did not involve tacking individual restoration treatment time together to get over the twenty-one month hurdle. In *Nowell*, there was only one determination that the defendant was incompetent. *Id.* at 401, ¶ 2, 199 P.3d at 656. Although he was subsequently found competent, we vacated that determination because the reviewing expert had not followed the statutory requirements. *Id.* at 402, ¶¶ 3–4, 199 P.3d at 657. On remand, the trial court found that Nowell was still incompetent, so that the original determination remained in effect. *Id.* at ¶ 5.

¶ 25 Here, Silva was never in restoration treatment at any time in excess of twenty-one months. After he was initially found incompetent and placed in restoration treatment, he was found to have been restored to competency in February 2002. Just before trial in January 2003, he again sought a new determination of his incompetency, was subsequently put in a restoration treatment program, and was found to have been restored to competency on January 13, 2004. Again, just before trial in 2005, he was found to be incompetent, placed in a restoration treatment program, restored to competency just over eighteen and one-half months later, and subsequently tried.

¶ 26 Because the statutes and rules were duly followed and Silva was never in a program to restore his competency that lasted longer than twenty-one months, and was restored to competency after each effort, we find no error.

## CONCLUSION

¶ 27 Based on the foregoing, the trial court did not err when it found that Silva was competent to stand trial, and we affirm his conviction and sentence.

CONCURRING: MICHAEL J. BROWN, Judge and MARGARET H. DOWNIE, Judge.