241 P.3d 512

Chris GELB, Plaintiff/Appellant,

v.

DEPARTMENT OF FIRE, BUILDING AND LIFE SAFETY, a political subdivision of the State of Arizona; Sedona Casa Contenta Homeowners Association, Inc., an Arizona non-profit corporation, Defendants/Appellees.

No. 1 CA CV 09–0744.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 28, 2010.

Aspey, Watkins & Diesel, P.L.L.C. By Frederick M. "Fritz" Aspey and Carson T.H. Emmons and Diana J. Elston, Flagstaff, Attorneys for Plaintiff/Appellant.

Terry Goddard, Attorney General By Camila Alarcon, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee Department of Fire, Building and Life Safety.

Carpenter, Hazlewood, Delgado & Wood, PLC By Jason E. Smith and Mark K. Sahl and Carrie H. Smith, Tempe, Attorneys for Defendant/Appellee Sedona Casa Contenta Homeowners Association, Inc.

## OPINION

THUMMA, Judge. *

¶ 1 This appeal arises out of a dispute between a homeowner, plaintiff/appellant Chris Gelb ("Gelb"), and her homeowners' association, defendant/appellee Sedona Casa Contenta Homeowners Association ("HOA"), regarding the application of the conditions, covenants, and restrictions ("CC&Rs") governing Gelb's property. The dispositive issue is whether a statutory administrative hearing process for the resolution of disputes between homeowners and homeowners' associations in planned communities, such as Gelb's dispute with her HOA, violates the Arizona Constitution's separation of powers

provision. We hold the administrative hearing process violates the separation of powers provision of Article 3 of the Arizona Constitution. We therefore vacate the judgment of the superior court and direct the Department of Fire, Building and Life Safety ("DFBLS") to dismiss Gelb's complaint without prejudice for lack of jurisdiction.

## FACTS AND PROCEDURAL BACKGROUND

### I. Administrative Process

¶ 2 In 2006, the Arizona Legislature established an administrative hearing process for the resolution of disputes between homeowners and homeowners' associations in planned communities ("Administrative Process"). See Ariz.Rev.Stat. ("A.R.S.") §§ 41-2198 to -2198.05 (Supp.2009); see also A.R.S. § 33-1802(4) (2007) ("planned community" includes homeowners' associations). The scope of the Administrative Process is limited to claimed violations of planned community documents or statutes.[1] A.R.S. § 41-2198.01(B).

¶ 3 Under the Administrative Process, the homeowner or homeowners' association may file a petition for hearing with the DFBLS. A.R.S. § 41-2198.01(B). After reviewing the petition and response, the DFBLS director may refer the petition to the office of administrative hearings ("OAH") for a hearing before an administrative law judge ("ALJ"). A.R.S. § 41-2198.01(E). The DFBLS has no further involvement in the matter.

¶ 4 After a hearing, the ALJ will render a decision and may order a party to comply with the relevant planned community documents or statutes. A.R.S. § 41-2198.02(A). The ALJ's decision is final and not subject to any review or rehearing by the DFBLS. A.R.S. § 41-2198.02(B). The sole relief available to a party aggrieved by the ALJ's decision is review by the superior court.

---

* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Arizona Supreme Court designated the Honorable Samuel A. Thumma, Judge of the Arizona Superior Court, to sit in this matter.

1. "Community documents" are "the declaration, bylaws, articles of incorporation, if any, and

rules, if any." A.R.S. § 33-1802(2). "Declarations" are "any instruments, however denominated, that establish a planned community and any amendment to those instruments." A.R.S. § 33-1802(3); see also A.R.S. §§ 33-1801 to -1816 (2007 & Supp.2009) (governing planned communities).

A.R.S. §§ 12–905(A), (B)(2)-(3) (2003); 41–1092.09(B) (2004); 41–2198.04(A).

## II. Gelb's Dispute with the HOA

¶ 5 In 2005, Gelb began building a home in a subdivision managed by the HOA. In 2007, without Gelb's permission and after a dispute arose over her landscaping, the HOA placed crushed rock in the common area in front of Gelb's home. Pursuant to the Administrative Process, Gelb filed a petition with the DFBLS in 2008, alleging the HOA had violated the CC&Rs. After the HOA filed a response, the DFBLS referred the matter to the OAH.

¶ 6 Later in 2008, following a hearing, the ALJ issued a decision finding that the HOA had not violated the CC&Rs. Gelb then filed a complaint in superior court seeking review of the ALJ's decision. The HOA moved to dismiss the complaint, asserting the Administrative Process was unconstitutional because it violates the Arizona Constitution's separation of powers provision. The superior court summarily denied the HOA's motion. After additional briefing and oral argument, the superior court found the ALJ's decision was supported by the substantial weight of the evidence and denied Gelb relief. Gelb timely appealed to this court. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 7 Gelb argues the superior court should have vacated the ALJ's decision because, first, the ALJ failed to address all issues raised in her complaint and, second, the deci-

sion was arbitrary and capricious. Gelb asserts the superior court failed to apply the proper standard of review and erred in finding substantial evidence supported the ALJ's decision. The HOA argues we need not reach these issues because the Administrative Process is unconstitutional as it violates the Arizona Constitution's separation of powers provision. The HOA, therefore, contends the superior court properly rejected Gelb's claim for relief, albeit for a different reason. Finding the constitutional issue properly is before this court[2] and the case cannot be fairly decided on nonconstitutional grounds,[3] we hold that the Administrative Process is unconstitutional, a decision that resolves the appeal.

¶ 8 The Arizona Constitution expressly provides that "[t]he powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial." Ariz. Const. art. 3. "The Arizona Constitution, written after generations of experience and experimentation under the United States Constitution, spells out the separation of powers doctrine even more specifically than does the national document." State ex rel. Woods v. Block, 189 Ariz. 269, 275, 942 P.2d 428, 434 (1997). Article 3 of the Arizona Constitution states the three departments "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. Despite this express directive, the powers of each department are

**2.** Gelb argues the constitutional issue is not properly before this court because the HOA failed to file a cross-appeal. We allowed the parties to address the issue in supplemental briefing and now reject Gelb's argument. An appellee must file a cross-appeal for an appellate court to modify the judgment "to enlarge the rights of the appellee or to lessen the rights of the appellant." ARCAP 13(b)(3). By holding the Administrative Process unconstitutional, we are neither enlarging the HOA's rights nor lessening Gelb's rights, meaning the HOA was not required to cross-appeal.

Gelb also argues waiver, claiming the HOA failed to raise the constitutional issue before the superior court. We disagree. In the superior court, the HOA moved to dismiss the matter, asserting the Administrative Process was unconstitutional and citing applicable authority.

Therefore, the HOA sufficiently apprised Gelb and the superior court of the constitutional issue. Accordingly, the constitutional issue was not waived by the HOA and is properly before this court. See also State v. Silva, 222 Ariz. 457, 459, ¶ 9, 216 P.3d 1203, 1205 (App.2009) (noting issue of "subject matter jurisdiction is never waived and can be raised for the first time on appeal").

**3.** See, e.g., R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist. No. 11, 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997) ("We will not reach a constitutional question if a case can be fairly decided on nonconstitutional grounds." (citing Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n, 177 Ariz. 256, 259, 866 P.2d 1342, 1345 (1994))).

not mutually exclusive; the Arizona Constitution allows some "'blending' of authority" among the departments. *Cactus Wren Partners v. Ariz. Dep't of Bldg. & Fire Safety,* 177 Ariz. 559, 562, 869 P.2d 1212, 1215 (App. 1993) (citing *J.W. Hancock Enters., Inc. v. Ariz. State Registrar of Contractors,* 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984)).

¶ 9 The Arizona Legislature properly has vested various administrative agencies with certain judicial powers. *See id.* Administrative agencies appropriately "may resolve disputes between private parties *if* this authority is auxiliary to and dependent upon the proper exercise of legitimate regulatory power." *Id.* (emphasis added). An agency's statutory grant of authority violates Arizona's separation of powers limitations when the agency's authority usurps the power of another department, causing "significant interference ... with the operations of another department." *J.W. Hancock,* 142 Ariz. at 405, 690 P.2d at 124.

¶ 10 The parties agree *Cactus Wren* and *J.W. Hancock* set forth the proper analysis to determine whether a statute unconstitutionally usurps power properly belonging to another department. The analysis involves the consideration of four non-exclusive factors: "(1) the 'essential nature' of the power exercised; (2) the degree of control exercised by the agency in the exercise of the power; (3) the [L]egislature's objective in establishing the agency's functions; and (4) the practical result of the mingling of roles." *Cactus Wren,* 177 Ariz. at 562, 869 P.2d at 1215 (citing *J.W. Hancock,* 142 Ariz. at 405, 690 P.2d at 124).

¶ 11 In applying these factors, we are mindful that duly enacted laws are entitled to a strong presumption of constitutionality and any doubts should be resolved in favor of upholding a statute against constitutional challenges. *Aros v. Beneficial Ariz., Inc.,* 194 Ariz. 62, 67, 977 P.2d 784, 789 (1999); *Ruiz v. Hull,* 191 Ariz. 441, 448, 957 P.2d 984, 991 (1998). The HOA bears the burden of overcoming this strong presumption of constitutionality. *Eastin v. Broomfield,* 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977).

¶ 12 Starting with the first factor, the Administrative Process involves the adjudication of a dispute between private parties over the CC&Rs. The parties do not seriously dispute that this power is judicial in nature. *See also J.W. Hancock,* 142 Ariz. at 406, 690 P.2d at 125 ("Generally the adjudication of a dispute between two private parties is considered judicial.").

¶ 13 Turning to the second factor—the degree of administrative control—although exercising judicial power, the Administrative Process does not exert a "coercive influence over the judiciary since the judiciary has the ultimate power of review." *Id.* Judicial review of the ALJ's decision is "a critical judicial 'check' of administrative power," preventing the Administrative Process from exceeding its proper constitutional scope. *Cactus Wren,* 177 Ariz. at 563, 869 P.2d at 1216 (citing authority). Accordingly, the second factor supports the constitutionality of the Administrative Process.

¶ 14 Although distinct, the third and fourth factors share a common element—to be constitutional, the agency's actions must be related to the agency's primary regulatory purpose. *See J.W. Hancock,* 142 Ariz. at 406, 690 P.2d at 125. Stated differently, the agency's actions must be *"reasonably necessary* to effectuate the administrative agency's *primary, legitimate regulatory purposes."* *Cactus Wren,* 177 Ariz. at 562, 869 P.2d at 1215 (quoting *McHugh v. Santa Monica Rent Control Bd.,* 49 Cal.3d 348, 261 Cal. Rptr. 318, 777 P.2d 91, 106 (1989)). The Administrative Process fails to meet this standard.

¶ 15 The third factor looks at the "[L]egislature's objective in establishing the agency's functions." *Id.* This inquiry turns on whether the agency permissibly cooperates with the judiciary "by furnishing some special expertise" or impermissibly attempts to establish superiority over the judiciary in an area essentially judicial in nature. *J.W. Hancock,* 142 Ariz. at 405, 690 P.2d at 124 (quoting *State ex rel. Schneider v. Bennett,* 219 Kan. 285, 547 P.2d 786, 792–93 (1976)). As applied, this factor requires a nexus between the primary regulatory purpose of the DFBLS and the adjudicatory authority

granted in the Administrative Process. *See Cactus Wren,* 177 Ariz. at 562–63, 869 P.2d at 1215–16.

¶ 16 The DFBLS was established in 1986 "to combine the functions of the office of manufactured housing and the office of fire marshal into one department with administrative support to further the public interest of building and fire safety." 1986 Ariz. Sess. Laws, ch. 330, § 1. The stated purpose of the DFBLS is to:

> further the public interest of safety and welfare by maintaining and enforcing standards of quality and safety for manufactured homes, mobile homes and factory-built buildings and by reducing hazards to life and property through the maintenance and enforcement of the state fire code by providing fire training, fire investigations and public life safety education as provided for [by Arizona law]. It is also the purpose of the [DFBLS] to establish a procedure to protect the consumer of such products and services.

A.R.S. § 41–2141(A) (Supp.2009). Nowhere in this express purpose is the DFBLS authorized to regulate planned communities in any respect. Indeed, other than adjudication through the Administrative Process itself, there is no nexus between the regulatory authority or purpose of the DFBLS and the authority to regulate planned communities (which the DFBLS does not possess).

¶ 17 In *Cactus Wren,* the court held the DFBLS properly could adjudicate disputes between private parties relating to the Arizona Mobile Home Parks Residential Landlord and Tenant Act because such power supplements the DFBLS's "mission as expressed in its statutory purpose." 177 Ariz. at 563, 869 P.2d at 1216. Here, by contrast, the DFBLS adjudicated a dispute between private parties relating to planned communi-

ty documents, even though the DFBLS possesses no regulatory authority over planned community associations or documents.

¶ 18 Unlike mobile home parks, Arizona has never established a regulatory framework for planned communities within the DFBLS (or, apparently, any other agency). For planned communities, the DFBLS lacks the most basic of powers to administer a regulatory framework. For example, unlike its powers regarding mobile home parks, the DFBLS is not authorized to conduct any review of, and cannot modify or suspend, any ALJ decision regarding claimed violations of planned community documents or statutes and no party can apply for a rehearing with the DFBLS. A.R.S. § 41–2198.02(B). Given this lack of regulatory and other authority over planned community documents, statutes, or disputes, the Administrative Process does not enable the DFBLS to "furnish[ ] some special expertise" to the judiciary or otherwise. *J.W. Hancock,* 142 Ariz. at 405, 690 P.2d at 124 (quoting *Bennett,* 547 P.2d at 792).

¶ 19 Although the legislative history for the Administrative Process appears to set forth a need for administrative regulation of planned communities,[4] the amendments establishing the Administrative Process did not alter the purpose or authority of the DFBLS to include regulation of planned communities. As a result, the Administrative Process lacks any nexus between the regulatory purpose of the DFBLS and the statutory authority to regulate planned communities.

¶ 20 The fourth factor examines the practical result of the mingling of roles, including "actual experience over a period of time where such evidence is available." *J.W. Hancock,* 142 Ariz. at 405, 690 P.2d at 124 (quoting *Bennett,* 547 P.2d at 792). In *J.W.*

---

4. The Senate Fact Sheet for House Bill 2824 states the amendment creating the Administrative Process grants an ALJ jurisdiction over disputes between homeowners' associations and their members. Senate Final Amended Fact Sheet for H.B. 2824, 47th Leg., 2d Reg. Sess. (June 26, 2006). The House of Representatives Committee Minutes discussing the amendment indicated issues with homeowners' associations continued to be problematic and that going to court was not an adequate remedy for home-

owners when paying the homeowners' associations' fees or assessments would be less expensive than initiating court action. *Minutes of Meeting Before the H. Comm. on the Judiciary on Feb. 16, 2006,* 47th Leg., 2d Reg. Sess. 10 (Ariz. 2006) (statement of Rep. Farnsworth, Member, H. Comm. on the Judiciary). The amendment was designed to hold homeowners' associations accountable without prohibitive costs to homeowners. *Id.* (statement of Rep. Gray, Member, H. Comm. on the Judiciary).

*Hancock*, dissatisfied individuals could either (1) file an administrative complaint with the Registrar of Contractors seeking discipline against a contractor's license (which could involve a contractor's failure to comply with contract terms and could result in a limited statutory appeal to superior court) or (2) file an action in superior court. *Id.* at 406, 690 P.2d at 125. The court found the Registrar of Contractors' "limited ancillary power to construe contracts [in addressing an administrative complaint] does not threaten the core functions of the courts," due to the Registrar of Contractors' connection to the subject matter in dispute (i.e., administrative discipline against a contractor's license). *Id.*

¶ 21 Under the Administrative Process, homeowners or homeowners' associations may either (1) petition the DFBLS for a hearing concerning violations of planned community documents or statutes or (2) file an action in superior court. A.R.S. § 41–2198.01(B). Unlike the Registrar of Contractors in *J.W. Hancock*, or regulation by the DFBLS of mobile homes in *Cactus Wren*, the DFBLS lacks any connection—regulatory or otherwise—to planned communities. Nor is the DFBLS relying on any specialized knowledge or expertise—or applying any power related to its express regulatory purpose—in mechanically processing paperwork filed by private parties to a dispute over planned community documents or statutes. Thus, when viewing the practical result of the Administrative Process, the regulatory authority of the DFBLS arguably "threaten[s] the core functions of the courts." *J.W. Hancock*, 142 Ariz. at 406, 690 P.2d at 125.

¶ 22 The DFBLS itself has taken action consistent with this conclusion. Because this case implicates the constitutionality of a statute, we provided notice of the issue to counsel for the DFBLS.[5] In response, the DFBLS noted it wished to remain a nominal party and took no position on the constitutionality of the Administrative Process. The DFBLS further noted that two other cases found the Administrative Process violated the Arizona Constitution's separation of powers provision, one of which enjoined the DFBLS from taking any further action under the Administrative Process. The DFBLS did not appeal in either case and, in January 2009, the DFBLS "completely discontinued processing any claims" under the Administrative Process. These actions—by DFBLS based on its own experience—are consistent with our conclusion that the Administrative Process creates a constitutionally improper mingling of separate departments. *Id.* at 405, 690 P.2d at 124.

¶ 23 We do not suggest that the Legislature is without the power to properly grant the DFBLS (or any other appropriate administrative agency) authority to regulate homeowners' associations through a comparable administrative process. Indeed, the HOA concedes that the Legislature properly could create a new administrative agency or empower an existing agency to regulate community associations. Because such express regulatory authority was not properly granted here, however, the Administrative Process is not constitutional.

¶ 24 In accordance with well-established legal authority, the HOA has overcome the presumption of constitutionality of A.R.S. § 41–2198(3) and we hold the Administrative Process, as it applies to planned communities, violates the separation of powers provision set forth in Article 3 of the Arizona Constitution. We therefore vacate the superior court's judgment denying Gelb relief and direct the DFBLS to dismiss Gelb's complaint without prejudice for lack of jurisdiction.

## CONCLUSION

¶ 25 For the foregoing reasons, we vacate the judgment of the superior court.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and PATRICK IRVINE, Judge.

---

5. We also provided notice to the Speaker of the House and President of the Senate pursuant to A.R.S. § 12–1841(A) (Supp.2009). Neither of these officials sought to be heard in this proceeding.